Bigger, J.
This is an action brought by the city to compel the defendants by mandatory injunction to remove an encroachment in the form of a one-story building upon the sidewalk on East Broad street in this city.
The first question presented for determination is this: Are all the necessary parties to a final decree, in court? r(Te eon *450 tention of counsel representing the defendants, Philbrick and the ,Stm Publishing Company, is that the owner of the premises has not been duly served with process, and that the owner is a necessary party to the judgment or decree sought in this case.
Conceding that the owner of the premises is a necessary party in an action such as this, as has already been held by this court, I am still of the opinion, as I stated at the hearing, that service by publication upon George W. Saviers, the owner of the premises at the time this action was commenced, is good under the statute.
Section 5045, sub-division 5, provides that in actions which relate to or the subject of which is real or personal property in this state, when a defendant has or claims a lien thereon or an actual contingent interest therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and said defendant is a non-resident of the state or a foreign corporation, or his place of residence can not be ascertained, that service may be had by publication.
George W. Saviers, the owner of the premises upon which this building is erected, which it is claimed extends into the pavement of East Broad street, is a resident of the state of NeAv York. That service by publication was made as required by statute is not questioned. The defendant, Saviers, has not submitted himself voluntarily to the jurisdiction of this court. The relief sought in this ease consists in part of excluding the defendant, Saviers, from any interest in the part of the building which it is claimed encroaches upon East Broad street. It is contended that because this is an action for injunction, and because a decree of injunction operates in personam, that jurisdiction could not be obtained over the defendant, Saviers, by publication so as to empower this court to enter a decree which will operate in personam.
Conceding that a decree in injunction does operate in personam and that a personal judgment or decree can not be rendered against a non-resident defendant upon service merely by publication, and he has not entered his appearance voluntarily, it does not folloAV that the defendant, Saviers, is beyond the reach of any decree of this court in this case.
*451 That the action does relate to real estate can not be questioned. It is sought to compel a removal of a part of this building. The defendant, Saviers, had an interest in the real estate upon which this building stands which, it is alleged, encroaches upon the street, because he was the owner in fee of the lot upon which it was erected, and it is sought to exclude him from any interest in that part which obstructs the street, and, that being true, in my opinion service by publication upon him was authorized by sub-division 5 of Section 5045, and that this court by such service obtained jurisdiction which will enable it to render a final decree fixing and determining the fights and liabilities of the parties to this action. It would be a strange doctrine of the law, and one which I am not willing to accept, that a non-resident owner of property abutting upon a street in any Ohio municipality is a necessary party to an action against his lessee who has built a structure upon the lot which encroaches upon the street, and yet being a necessary party to an action to abate the same as a nuisance, is beyond the jurisdiction of the court so that no valid decree can be rendered. I do not think that the law is so powerless to redress wrongs as this contention assumes. Those who have succeeded to the title of this property from George W. Saviers are purchasers Us penclens,^and it is not necessary to make them parties as their rights are determined by the decree.
The next question which calls for consideration is this: The defendants demanded a jury trial, which demand was refused and the case heard by the court as one in which the defendants were not entitled to trial by a jury. Of course, if the defendants are-entitled to a jury trial then it would be error to proceed to make any finding and decree without the intervention of a jury. After careful consideration of this question I have reached the conclusion that the demand for a jury was rightly refused and that the case is one of equity cognizance. The decisions to' this effect are numerous and conclusive. The action is not one for the recovery of specific real property within the meaning of our statute. It is 'an action brought to obtain the abatement of a nuisance by decree of a. court of equity. I11 *452 my opinion it was not the legislative intention to exclude the jurisdiction of courts of equity which existed at common law to abate public nuisances, and this seems to have been recognized by the Supreme Court of this state. In the case of Crawford v. Rambo, 44 Ohio St., 279, Judge Minshall said in the opinion, at page 287:
“As to whether the plaintiff is entitled to relief upon his second cause of action, it is sufficient to say that in a proper case on the final hearing a decree may be entered for the abatement of the nuisance.”
To the same effect is the decision in Elyria v L. S. & M. S. Ry. Co., 12th Ohio Decisions, 609, on appeal affirmed by the circuit court (3 C. C.—N. S., 250), and by the Supreme Court in 69 Ohio St., 414.
Pomeroy says, at Section 1349:
“A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction at the suit of the attorney-general in England or at a suit of the state or people or municipality or some proper officers representing the commonwealth in this country.”
Spelling says, at Section 376:
“The superior adaptability of the equitable remedy by injunction to give more complete, convenient and perfect relief than any obtainable by law is universally recognized. ’ ’
At Section 379 the same author says:
“Certain offenses and occupations are usually considered to be essentially injurious to health and comfort or dangerous to life, and will be enjoined upon slight evidence of special injury, or perhaps in some eases upon no other evidence than that they exist and that persons reside in their vicinity. Thus a railway or enclosure in a street or highway constructed without legal authority is necessarily a public nuisance. ’ ’
The case of Wilmorth v. Woodcox, 66 Mich., 331, was an action brought to abate a private nuisance by injunction. The nuisance complained of was the projection of the cornice of defendant’s building over the land of the plaintiff. It was claimed in that case that the plaintiff had an adequate remedy *453 at law and that the determination of this question by a court deprived the defendant of the right to trial by jury under the statute of the state. In that case the defendant answered, denying that the line was where the plaintiff alleged it to be, and it was claimed that upon that question the defendant was entitled to a trial by jury. 'The court held there was something more involved than the mere question of a boundary line; that the maintenance of the cornice was a nuisance in the nature of a permanent injury to her property which called into exercise the jurisdiction of a court of equity as the only proper tribunal to afford full and adequate relief.
To the same effect was the decision of the Supreme Court of Illinois in the case of Wahle v. Renbach, 76 Ill. I have not the page.
One of the fullest and best discussions of this whole "subject 'which I have found was in the case of Smith v. McDowell, 148 Ill., 51. The sixth branch of the syllabus of that ease is:
“A building or other structure of a like nature, erected upon a street without the sanction of the Legislature, is a nuisance, and local corporate authorities can not give a valid permission thus to occupy the street, without expressed power conferred upon them by charter or statute. ’ ’
The eleventh branch of the syllabus is:
“The permanent encroachment upon a public highway or street, unauthorized by the Legislature, and the creation of a purpresture thereon which obstructs the free and uninterrupted passage of the public, is, as a matter of law, a public nuisance. The matter of convenience, or that sufficient of the street -remains unobstructed to still accommodate the public travel, can not be considered. ’ ’
The thirteenth branch of the syllabus is:
“It is not necessary, when the erection is itself an invasion of the public right — that is, when it is a nuisance per se — that the fact should first be established at law, preliminary to the jurisdiction by injunction. The public is entitled to the speediest and most effectual way to prevent the threatened invasion of its rights, and if there has been a clear invasion of the common right, the unauthorized taking for private use of that which *454 belongs to tbe public, as, by tbe permanent occupation of a public street or a portion of it, injunction will be granted, at the suit of the proper officer, on behalf of the public, to prevent the creation and maintenance of the nuisance. ’1
I am satisfied, therefore, that it was the right and duty of the city solicitor, as soon as he discovered that the building was being erected, to proceed at once in a court of equity to restrain the erection of the building, and that the court thereby obtained jurisdiction to proceed without the intervention of a jury to hear and determine the questions at issue.
As to the contention that the city has shown no title to Broad street, it is sufficient to say that the evidence shows Broad street was one of the streets shown upon the original plat of the city of Columbus.
Upon that point the Supreme Court of Illinois said, in the case last cited:
“By the platting of a village, the streets in their entire width and length are dedicated to the use of the public. The village thereby becomes seized in fee of the streets and alleys for the use of the local and general public holding them in trust for such use and none other.”
To the same effect is the decision of Wright v. Oberlin, 3 C. C.—N. S., page 242.
The evidence in the ease shows that Broad street, as originally platted, was a street 120 feet wide. Mr. Bowen, who has knowledge of ancient monuments in this city that is certainly not surpassed by anyone, testified that there are monuments in existence marking the boundary line of East Broad street, and that according to these monuments, with which he has been familiar for something like fifty years, the north boundary line of East Broad street is twenty feet north of the north curb. Mr. Legg’s testimony is to the same effect, that the north boundary line is twenty feet north of the curb. The building in question extends about 2.7 feet south of this line, and is therefore an encroachment upon the street.
I see no merit in the claim that because certain other property owners have encroached upon the street without anything *455 to show permission to do so from the city, that this in some way works an estoppel even against the city in favor of the defendants. In the first place estoppel is not pleaded, but even if it were I do not see anything in the evidence which would work an estoppel against the city. No authority has been cited which would support the defendants’ claim in this respect, and I think none can be.
In the case of City of Cincinnati v. Evans, the city, engineer had given the owner the street line and he built in reliance upon that. Nothing of that kind appears in this case. So far as the evidence goes it appears only that some of the abutting property owners have encroached upon the street. In my opinion none of those encroachments, with the exception of the old Chittenden homestead, fall clearly within the principle announced in City of Cincinnati v. Evans, and the Supreme Court has clearly, I think, indicated that it will not extend the doctrine of that case.
Neither is there any merit in the claim that because the city council passed an ordinance fixing the width of sidewalks upon streets thereafter paved or repaved at a certain width, that this in some way amounted to an abandonment of some part of the city’s streets. The statute provides the only method by which the city council may narrow a street, and in that way only can" it be accomplished.
The boundaries of Broad street are clearly marked by well known and established monuments, which are not questioned by anyone. The engineers who have testified in the case agreed that according to these monuments Broad street is 120 feet wide, having a roadway eighty feet and sidewalk of twenty feet. The evidence is clear and undisputed as to the true boundaries of this street, and it is clear that the building is an encroachment upon the sidewalk, and that the .city is entitled to have it abated as a nuisance.
Coming then to the question of the proper decree to be entered, the undisputed evidence shows that the building was erected by the defendant Philbrick. Philbrick made the contract and paid the contractor for the work. So far as the evidence discloses the owner of the property had no knowledge even *456 that such a structure was being erected. No decree, therefpre, can be or should be entered requiring the defendant, Saviers, to remove the building, as there is no evidence to show that he is in any way responsible for its erection or continuance. It is also probably true that an order of that sort could not be entered against him upon service by publication'. The only order necessary to final determination of this case against the defendant, Saviers, is a finding that he has no right to or interest in this'building, beyond a line twenty feet north of the north curb of East Broad street.
The city is, however, entitled to an order against the defendants, Philbrick and the Sun Publishing Company, directing them to abate the nuisance within a time to be fixed. The defendant, Philbrick, created the nuisance and can not escape his liability to remove it. Neither can he escape his obligation to remove it by any contract or agreement of his own with the Sun Publishing Company. The Sun Publishing Company is a Us pendens purchaser and obtained no greater right than Philbrick had, and by leasing and occupying the premises becomes responsible' for the maintenance and continuance of the nuisance.
On this subject, Wood on Nuisance says, at Section 795, that bills for injunction and for damages resulting therefrom may be brought against any party who is aiding or abetting therein or who is in any measure upholding the same.
Joyce on Nuisance says, at Section 474:
“In the case of a public nuisance the wrongdoers may be sued jointly or severally in a suit to abate such nuisance.”
And again at Section 475 he sajes:
“So the erector of a nuisance and the purchaser may be joined, and owners of distinct interests or separate portions in severalty may also be joined.”
Again at Section 217 it is said:
“The owner who has created a nuisance in a highway can not shelter himself behind the claim that some one else is under a legal liability to remove it.”
Wood says, at Section 837:
G. S. Marshall, for plaintiff.
L. G. Addison, for defendants.
‘ ‘ The fact that the defendant can not enter to abate the nuisance does not excuse his liability, for it is his own wrong which has involved him in trouble. ’ ’
The defendants will be given a reasonable time within which to abate this nuisance, and the decree against Philbrick and the Sun Publishing Company is that they be enjoined from maintaining this encroachment upon the street after the first day of September, 1907, and that the sidewalk be restored to its former condition of usefulness to the full width of twenty feet north of the north curb of Broad street, and that if the same be not done by that day that the city may cause the same to be done at the expense of the defendants, Philbrick and the Sun Publishing Company. The city is also entitled to recover its costs against the defendants, Philbrick and the Sun Publishing Company, incurred in this action.