HANLEY *v.* STULMAN ET AL.

[No. 223, September Term, 1957.]

*Decided April 29, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Claude A. Hanley* and *Charles J. Hessian* for the appellant.

*Gus Chambers,* with whom was *Charles M. Cohen* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

On an earlier visit the parties to this appeal sought our

determination as to whether Hanley, the present appellant, had a right of way over the land of Edmondale Building Company, one of the present appellees (the other appellee is Leonard Stulman, President of Edmondale; the two appellees hereinafter will sometimes be referred to as "Edmondale"). In *Hanley v. Stulman,* 212 Md. 273, we agreed with the finding of the chancellor that Hanley had established the existence for more than twenty years, and adverse user by him and the public for more than that time, of a ten-foot road running from Lincoln Ave. north to Seminary Ave. through the land of Edmondale in Lutherville devoted to large scale building of houses for sale, but found that the chancellor was wrong in dismissing Hanley's bill to enjoin the obstruction of the road. The opinion found that Edmondale, after timely written notice of Hanley's claim of right to use the road, graded and "completely blocked and destroyed a portion of the aforesaid road and rendered it impassable." Because of this Hanley was unable to show the precise location of all of the road. He did show the location of the road for a distance north of Lincoln Ave. of some three hundred fifty feet, and the location south of Seminary Ave. for some forty-five feet. The ends of the located portions were designated and referred to in the opinion, as they had been by the parties, as points "b" and "a", respectively. Between points "a" and "b", the course of the road was undeterminable because along that stretch Edmondale had completely obliterated all evidence of the road. The chancellor dismissed Hanley's bill because he had not met his burden of "establishing by his evidence the exact location, description, width and course of the entire road." In reversing, we said that the general rule was as the chancellor had stated it but that "In none of the cases we have examined, here or elsewhere, has the plaintiff been prevented from meeting this burden by the deliberate and reckless actions of the defendant. In the instant case, the appellant has successfully established all of the required elements, except the 'exact' location of the road or way between points 'a' and 'b' on the above exhibit. The former existence of the same between these two points was clearly proven. The appellant was prevented from showing

this 'exact' location, because the appellee completely ob-
literated its former location by bulldozing and grading op-
erations.   Under these unusual circumstances, we think the
chancellor by his decree should have located the roadway
between 'a' and 'b' on appellant's Exhibit No. 1, by con-
necting these two points by a straight line (the width to be
ten feet) or in such a manner as to provide the appellant and
the public a substantially equivalent road or way, between
these two points, as described in the evidence.   In this man-
ner, the parties may be able to arrive at a satisfactory ad-
justment of the matter, and, if they cannot, the chancellor
may do so for them, without undue injury to anyone."

Upon remand, the parties were unable to agree.   The
chancellor designated James E. Spamer, a registered engineer
who had never been associated with either side, "to join the
points referred to (in the Court of Appeals opinion) as 'a'
and 'b', in such manner as to provide the appellant and the
public a roadway 10 feet wide substantially equivalent to the
roadway heretofore existing between those two points."
Spamer duly filed his report and two maps he had prepared,
showing a proposed connection between the two points.   On
June 12, 1957, the chancellor passed a decree directing that
the road be located between "a" and "b" as Spamer had
suggested.   On July 5, 1957, Edmondale filed a petition for
modification of the decree of June 12, alleging that the road
as located by that decree would come within five to seven
feet of several "large, substantial and expensive" houses and
that it would run through the wall of another similar house,
and require grading as much as twenty-five feet in height
along a substantial portion of its length, as well as the build-
ing of retaining walls of that height within a few feet of the
homes.   It was urged that the Court of Appeals never in-
tended the road to be located in that manner nor to cause a
tremendous loss and damage to the defendants.   The petition
was heard on July 30, 1957, and Edmondale produced a civil
engineer who testified that the road, if located as the decree
of June 12 directed, would pass through the carport of, and
1.23 feet into the corner of, Edmondale's house known as
No. 123 Seminary Ave. and run six feet from another house

and nine feet from a third house, and that the grade of the road would be eighteen feet below the grade outside of one of the houses and so would require a retaining wall. It was also testified that another retaining wall would be necessary adjacent to another of the houses and that these high retaining walls and great differences in grade would constitute a hazard to children in the yards of the houses. The witness presented a plat on which he had delineated a proposed road which ran southwesterly from "a" until it was some forty or more feet west of the Spamer road, and then turned sharply southeast to point "b". He estimated the cost of constructing the Spamer road to be some $14,000, while the cost of the route he suggested would be $1,400.

On August 20, 1957, the chancellor rescinded the decree of June 12, and passed a decree locating the road in the manner suggested by the Edmondale engineer. On September 18, Hanley filed a petition that sought modification of the decree of August 20, and asked for a hearing on allegations that the road located by that decree ignored the recommendations of the impartial engineer appointed by the court; that it was not near the location of the destroyed portion of the original road; that, in effect, the decree permitted Edmondale to destroy a public road and substitute a road of its own selection and that testimony now could be produced to show the course of the original road. Edmondale filed a motion *ne recipiatur* to the petition. A hearing was held and the court permitted Hanley to offer the testimony of three engineers to show the location of the original road. They relied in large part on aerial photographs which had been discovered only a short time before and testified that with the aid of these photographs the original course of the road could be located with substantial accuracy. They further said, as had Spamer in his testimony before the passage of the August 20 decree, that the road as located by the decree of August 20 was not near the location of the original road and was not substantially equivalent to it. At the end of the hearing, the chancellor ruled on November 6, 1957, that the testimony offered came too late, gave it no consideration or weight (although he indicated that if offered sooner, it would have

had material bearing), and granted Edmondale's motion *ne recipiatur*. On the same day Hanley appealed from the decree of August 20, 1957, and on November 22 he appealed from the order of the chancellor granting the motion *ne recipiatur*.

Edmondale moved to dismiss the appeal from the decree of August 20 because it was not taken within thirty days from the passage of the decree. Rule 625 of the Maryland Rules provides that for a period of thirty days after the entry of judgment, or thereafter pursuant to a motion filed within such period, the court shall have revisory power and control over such judgment. This rule is the same, in effect, as General Rules of Practice and Procedure, Part VI, Rule 1. When the former rule was in effect, this Court held in *Hancock v. Stull,* 199 Md. 434, 437, that the mere filing of a petition for rehearing or reconsideration of a decree does not suspend it and that a court cannot order that a decree shall not be enrolled nor extend the time for appeal. It said, however, that the lower court can suspend the operation of a decree, and held that the order in that case, which in terms said that the decree should not become enrolled and that the applicant should have thirty days from the date of the ruling on the petition for rehearing to file an appeal, showed an intention to suspend the operation of the decree or order of May 17, 1951, and had the effect of so doing, and, therefore, that an appeal taken within thirty days of the action of the court on the rehearing, was taken in time.

In the case before us, the filing of the petition for rehearing and the Court's order granting it were both filed within thirty days of the decree of August 20. The order provided that "a hearing be held on the Decree of this Court of August 20, 1957, at which time the parties may present such testimony and evidence as they desire and upon which this Court will determine what action shall be taken with respect to the relief prayed for; and * * * said hearing is set for the 7th day of October, 1957, at 10 A. M." While it would have been preferable to have in terms suspended the operation of the decree of August 20, it is manifest that unless the court so intended, the order would have been meaningless and

futile for the decree would have become enrolled well before the date set for the hearing at which the court said it would determine what action it would take as to it. As in *Hancock v. Stull,* since the order signed on the petition showed an intention to suspend the operation of the decree it had that effect and the appeal taken within thirty days from the reaffirmance of the decree on November 6 was in time. See also *Bennett v. Bennett,* 5 Gill 463, 466 and *Bailey v. Bailey,* 186 Md. 76. The motion to dismiss the appeal is denied.

We come now to the question of whether the decree of August 20 was erroneous and whether the action of the chancellor, in refusing to consider the testimony taken at the hearing in November, 1957, on the proposal to modify the decree, was an abuse of discretion. At the hearing which preceded the decree of August 20, there was testimony from Spamer, the independent engineer, that the road proposed by the Edmondale engineer and finally adopted by the chancellor, was not a substantial equivalent of the original road, and we think that the record sustains this view. It would seem that the court was swayed by the language of this Court in the first appeal, in 212 Md. 273, that if the parties could not, the chancellor might locate the road for them "without undue injury to anyone". The decision to move the road to the west would seem to have been based on the ground that to use the Spamer road would inflict undue injury on Edmondale in causing it to move one house and to construct relatively expensive retaining walls. We think that Edmondale is in no position to claim undue injury on these grounds. Not only was it warned in writing before any dislocation of the road was brought about that the road was a public way, but, as the chancellor expressly found in the first trial and mentioned at subsequent hearings, it flatly stated that it would take a chance on building on and near the road and changing the contours of the land adjacent to it, as if no road existed. While the case was going on below and during the time the first appeal was pending in this Court, Edmondale constructed the very houses that are on or near the original road and the Spamer road, and also brought about the changes in grading which it now says would make

the Spamer route an undue hardship to it. It deliberately created the conditions it now seeks to perpetrate by relocating the road on a course of its own selection. We find Edmondale to be in no better position than was the obstructor in *Lichtenberg v. Sachs,* 213 Md. 147, who was, in effect, ordered to remove a house from a right of way on which he had deliberately built it.

As was restated in *Hancock v. Stull, supra,* at page 437 of 199 Md., ordinarily a denial of a rehearing is an exercise of a judge's discretion and is not appealable unless there has been an abuse of that discretion. We think the failure of the chancellor to consider the evidence produced at the November hearing was an abuse of his discretion. He need not necessarily have granted a rehearing, but having done so and having allowed the evidence to come in, he should have considered it. *Washington, Baltimore & Annapolis Railroad Co. v. Kimmey,* 141 Md. 243, 249, *et seq.; Transportation Co. v. Tire Co.,* 163 Md. 142, 145. The evidence before him went to the very question which this Court, in remanding the case on the first appeal, said should be determined as nearly as could be, that is, the precise location of the destroyed portion of the original road. The aerial maps discovered just before the hearing of November, 1957, would have permitted the location of the original road to be ascertained with reasonable accuracy according to the testimony. Under the circumstances of this case, we think that it should have been received by the chancellor to help him in determining where the original road was located as the first mandate of this Court contemplated.

> *Decree of August 20, 1957, and the order of November 6, 1957, reversed, with costs, and case remanded for further proceedings not inconsistent with this opinion.*

GRAY, J., specially assigned, dissents.