## DUNDALK HOLDING COMPANY *v.* EASTER

[No. 123, September Term, 1957.]

*Decided January 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William Saxon* and *Ellis Peregoff* for the appellant.

*George Washington Williams* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The Andrew Easter—Dundalk Holding Company appellate saga reaches the fourth chapter in this opinion.

In *Dundalk Holding Company v. Easter,* 195 Md. 488, an action of ejectment, the jury found that one wall of Dundalk's theater building rested in part on a strip of Easter's land,

and this Court affirmed a judgment for Easter that described the encroached upon strip as being 132 feet long and from .36 feet to .95 feet wide.

In *Easter v. Dundalk Holding Company*, 199 Md. 303, we refused the theater company's prayer that the enforcement of the ejectment order be enjoined.

In a second appeal under the same name—*Easter v. Dundalk Holding Company*, 199 Md. 324—a judgment below for Dundalk in Easter's suit for damages for loss of lateral support was affirmed.

In the present appeal, Dundalk asks us to reverse an order of the Superior Court, entered in the ejectment case in June, 1957, that "The Dundalk Holding Company do forthwith in accordance with the judgment of this Court remove said wall within six months of the date of the service hereof." Although a writ of possession had been delivered to the sheriff of Baltimore City in 1950, he had not executed it, and the matter rested until 1956 when, at the instance of Easter, the sheriff filed an amended return setting forth that he could not execute the writ as commanded because he could not enter on the land which is "occupied by a long side wall of the Paramount Theatre". Thereupon, Easter filed a petition in the ejectment case, reciting these facts and praying that Dundalk be required to remove the wall in accordance with the judgment of the court and that he might have such further relief as the exigencies of his case required. Dundalk's answer denied Easter's right to the relief prayed for and set forth a defense on equitable grounds, in which it was alleged that in order to put Easter in possession, it would be necessary to tear down and remove the base or superstructure of the brick wall constituting part of the theater building; that if this is done, the building would be materially damaged; that it would take six months to accomplish the delivery of possession, that it would occasion the loss of $5,000 rental income and that it would cost $100,000 to tear down and reconstruct the wall. It is further alleged that after the completion of the theater building, Easter still had an unimproved frontage on Belair Road of over three hundred feet, and that the value of his lot has increased by reason of

the erection of the theater from $42 a front foot to $100 or $150 a front foot. The Superior Court decided that Easter was entitled to the relief prayed and ordered Dundalk to remove the wall.

We neither know, nor have we been referred to, any authority or precedent that would enable a court of law to issue an injunction directing execution of its judgment, unless such authority has been given by rule (such as Maryland Rule 628 d) or statute (such as the provisions of Ch. 456, Laws of 1888, now Code, 1951, Art. 75, Secs. 135 to 147). *2 Poe, Pleading and Practice* (Tiff. ed.), Sec. 623, says that possession of land is completely and effectually restored either by the writ of *habere facias possessionem* at law or the decree of a court of equity. In Sec. 334 E, at 314, Mr. Poe sets forth what are now Secs. 135-147 of Art. 75, and says: "There is no reason why these liberal statutory provisions should not be freely invoked and applied * * * as an easy mode of avoiding the necessity of separate and distinct proceedings, either by way of mandamus or injunction, and no doubt is entertained that constant advantage will be taken of this valuable *statutory amendment of our law and practice.*" (Emphasis supplied.) See *Superior Construction Company v. Elmo,* 204 Md. 1, 25-26. Although Secs. 135 to 144 are expressly inapplicable to actions in ejectment, Sec. 145 provides that any party to an action at law, whether before or after judgment, may apply "* * * for a writ of injunction to restrain the other party in such action from the repetition or continuance of the wrongful act * * * or the committal or injury of a like kind * * * relating to the same property or right;" this section authorizes the court of law to give judgment "that such writ may be granted or denied * * * upon such terms * * * as to such court may seem reasonable and just." The appellant argues that the order of the Superior Court appealed from could only be supported by the statute we have quoted, and we agree. Appellant continues its argument by urging that the same tests and standards are applicable to a mandatory injunction issued by a court of law as to such an injunction issued by a court of equity, and that an equity court will not require the removal of an en-

croachment which was made innocently where the damage to the offender would be grossly disproportionate to the benefit to be obtained by the owner whose land is invaded.

Injunction is historically and fundamentally a process of equity. "The remedy of injunction was undoubtedly borrowed by the chancellors from the 'interdicts' of the Roman law." 4 *Pomeroy, Equity Jurisprudence,* Sec. 1337 at p. 933. "Injunctions are granted only by courts of equity and only in cases of equitable cognizance according to the established principles of equity jurisdiction * * *." 1 *High, Injunctions* (4th ed.), Sec. 2 at p. 6. We think that the Legislature, in conferring upon the courts of law the power to issue injunctions, intended that the court should act in the issuance of the writ as would a court of equity. Clearly, the object was to liberalize the rigid procedures of the law and to avoid a multiplicity of actions. *Finglass v. Franke Sons Co.,* 172 Md. 135, 137. Section 145 of Art. 75 authorizes the enjoining of continuing trespasses, such as the encroachment of a wall. Equity in proper case historically enjoined trespasses of that nature. See *Herr v. Bierbower,* 3 Md. Ch. 456; *Schaidt v. Blaul,* 66 Md. 141. It did so either in exercise of its original jurisdiction or in aid of a title already declared by a court of law. For example, in *Hirschberg v. Flusser* (N. J. Eq.), 101 A. 191, where there was an encroachment and the title had been settled at law, the chancellor held that a mandatory injunction could issue to compel the defendant to remove the offending structure "if equitable considerations do not prevent". See, too, *Cutrona v. Columbus Theater* (N. J. Eq.), 151 A. 467, where the sheriff could not deliver possession under judgment at law and equity issued a mandatory injunction. We read the statute as conferring upon the law court the right to do in the action before it what a court of equity could do in a separate action. Pomeroy, in the work cited, says in Sec. 1337 at 934-935 that injunctions "all depend upon the same *general* principles, doctrines, and rules which determine and regulate" equity jurisdiction, and adds: "In the states adopting the reformed procedure, the codes contain general provisions describing the cases in which an injunction may be issued, but these provisions do

not materially alter the settled equitable jurisdiction * * *." The decisions in Code States, such as California and New York, indicate that traditional equity principles control in the issuance of injunctions. *Morgan v. Veach* (2nd Dist. Cal. App.), 139 P. 2d 976; *Crocker v. Manhattan Life Ins. Co.,* 70 N. Y. S. 492; *Carroll v. Bullock* (N. Y.), 101 N. E. 438. Compare *Hahl v. Sugo* (N. Y.), 62 N. E. 135, where there existed the precise factual situation of this appeal, and the mandatory injunction was refused because it should have been sought in the original code action analogous to ejectment and was not. The Court of Appeals held that since injunctive relief was not asked for originally nor sought by amendment, and the original judgment had not been appealed from, the injunction should not later be issued. That the Legislature intended that the issuance of an injunction under Sec. 145 of Art. 75 be controlled by equitable principles is indicated by the limitations that its issuance or denial shall be upon such terms as to the court seem "reasonable and just".

Easter argues, as the trial court found, that the doctrine of comparative hardship was necessarily made inapplicable to this case by the decision of *Easter v. Dundalk Holding Company,* 199 Md. 303, cited above, and argues further that the encroachment was not done innocently, so that the doctrine would not be applicable.

We think that Easter's conclusion on this point is not sound. The holding of the *Easter* case last referred to was that equity would not interfere with the execution of a judgment at law in ejectment because to do so would, in effect, give the offender the power of eminent domain. The doctrine of comparative hardship is recognized and discussed in the opinion. Judge Delaplaine said for the Court at pages 305, 306: "Thus it is an accepted rule that where a landowner, by innocent mistake, erects a building which encroaches on adjoining land, and an injunction is sought by the owner of the land encroached upon, the court will balance the benefit of an injunction to the complainant against the inconvenience and damage to the defendant, and where the occupation does no damage to the complainant except the mere occupancy of a comparatively insignificant part of his lot, or the building

does not interfere with the value or use of the rest of his lot, the court may decline to order the removal of the building and leave the adjoining landowner to his remedy at law." He then went on to point out that "* * * the doctrine of comparative injury is not applicable in a case like the one before us. This is not a case where the owner of land encroached upon is applying for an injunction to remove the encroachment. The owner of the building is attempting to obtain relief in equity from a judgment regularly obtained against it." The distinction was made again in *Lichtenberg v. Sachs,* 213 Md. 147. The posture of the case we are now deciding is the converse of that presented in the *Easter* case quoted from. It is true that the refusal of equity to afford relief to the injured party produces some of the effects which are recited as a basis for refusing relief at the instance of the offending party. If the invaded landowner's remedy at law is inadequate because the sheriff cannot execute the writ of possession, as in the case before us, (see a discussion on the point in *Fisher v. Goodman* (Wis.), 237 N. W. 93, 95) and equitable principles dictate refusal of a mandatory injunction, relief in other forms may be afforded him. The equity court may give him the option of tendering a deed for the land encroached upon and receiving a fair purchase price, or if he does not desire to do this, may itself award him damages, or remit him to the law court to seek damages. Firmly established are the doctrine of comparative hardship and the right to refuse a mandatory injunction to the invaded owner, if the mistake is innocent and the damages to the offender tip the equitable scales unduly against him because the invasion and the benefit to the injured owner are slight. In addition to the cases cited in the *Easter* opinion, see an extensive annotation in 28 A. L. R. 2d 679, and particularly the cases cited in Secs. 6 and 7; *Hunter v. Carroll* (N. H.), 15 A. 17; *Coombs v. Lenox Realty Co.* (Me.), 88 A. 477; *Waterbury Trust Co. v. G. L. D. Realty Co.* (Conn.), 199 A. 106, 109; *McKean v. Alliance Land Co.* (Cal.), 253 P. 134; *Cox v. City of New York* (N. Y.), 193 N. E. 251, *certiorari* denied, 294 U. S. 729, 79 L. Ed. 1259. The doctrine has been applied in Maryland. See *Schnepfe v. Consolidated Gas Co.,*

164 Md. 630, 634-636, and cases cited, and *Fleischmann v. Hearn,* 141 Md. 463; *Maryland Hotel Co. v. Engraving Co.,* 92 Md. 710; *Whalen v. Dalashmutt,* 59 Md. 250.

We think the facts in the case bring it within the ambit of the doctrine. Easter's land was valued at $500 by the chancellor in the suit by Dundalk to enjoin the execution of the judgment in ejectment, although Dundalk claimed that it was worth but $150. There is no counter to Dundalk's claim that it would cost some $60,000 to tear down and rebuild the wall. The record and the opinion in the appeal from the judgment of ejectment in the earlier phases of the case that is now before us—*Dundalk Holding Company v. Easter,* 195 Md. 488, cited above—make it plain that the mistake was innocent on the part of Dundalk. A leading surveyor of the City had been employed to draw the description in the deed to Dundalk, and Dundalk relied on that description in building the wall. The ejectment case went to the jury on the conflicting testimony of the surveyor on whom Dundalk had relied and on that of other surveyors employed by Easter, and the jury resolved this difference of professional opinion in favor of Easter. There was nothing in that phase of the case to show that the mistake had been other than innocent and resulted from reliance on the work of an expert who later was thought by a jury to be wrong.

To require Dundalk to tear down the wall would benefit Easter but slightly and would penalize Dundalk heavily. We think a court of law, in issuing an injunction under the statute, is required to apply equitable principles and that if the court below had done so in this case, it would not have issued the order it did.

*Order reversed, with costs.*