## AMABILE ET UX. *v.* WINKLES ET UX.

[No. 31, September Term, 1975.]

*Decided October 28, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Charles C. W. Atwater*, with whom were *Thomas A. Sheehan* and *Mylander, Atwater, Carney & Stone* on the brief, for appellants.

*Charles E. Wehland*, with whom was *Ronald L. Spahn* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

Appellants, Angelo N. Amabile and wife (the Amabiles), here seek to overturn the decree of a trial judge (Macgill, C. J.) in the Circuit Court for Howard County as modified by the Court of Special Appeals in *Amabile v. Winkles*, 24 Md. App. 292, 330 A. 2d 473 (1975). The facts were fully set forth in that opinion. We shall relate only such facts as are necessary for a full understanding of the controversy before us.

Appellees, Joseph I. Winkles and wife (the Winkles), brought an action against the Amabiles to enjoin them from interfering with a right-of-way claimed to be appurtenant to the Winkles' land. The Winkles own the south part of what is marked "Parcel 3" on the plat attached to this opinion which the reporter is directed to reproduce. The Amabiles own the remainder. Parcels 1, 2, and 3 originally constituted one tract. When the center portion, Parcel 2, was sold off, a right-of-way over Parcel 1 was granted to the purchaser. At the same time the owner reserved an easement for the benefit of Parcel 3 across Parcel 2. These easements were not precisely delineated. When the portion of Parcel 3 now owned by the Winkles was sold by the original owners the "together" clause in the deed, in addition to the usual reference to "the rights, alleys, ways, waters, privileges, appurtenances and advantages, to the same belonging, or in any wise appertaining," referred specifically to "the right of ingress and egress over the right of way

twelve feet wide mentioned in the aforesaid deed to Schotta [from the original grantor] . . . ." Without such an easement there would have been no effective means of entrance to the land now owned by the Winkles since the terrain makes impracticable an entrance in the nature of a road through the little bit of frontage on Fels Lane.

As the Amabiles put it in the statement of facts in their brief in this Court:

> "On January 19, 1971 the Winkles acquired . . . in fee simple, a 1.078 acre lot lying on the northeast side of Fells Avenue (or Fels Lane, the improvements thereon being known as No. 3615 Fels Lane) and adjoining on the southeast the property of the Amabiles with a common line between the two properties for a distance of approximately 264.16 feet . . . . In describing the property thereby conveyed the Winkles' deed referred to 'the conveyance from James M. Haines to August Schotta dated May 27, 1908 recorded among the Land Records of Howard County in Liber W.W.L.C. No. 85, folio 526' and recited, in part, that they took the property:
>
>> 'TOGETHER with the buildings and improvements thereon and all and every the rights and appurtenances thereto belonging or in anywise appertaining, *and especially the right of ingress and egress over the right-of-way twelve feet wide mentioned in the aforesaid deed from Haines to Schotta,* and the reservation of a similar right-of-way for ingress to and egress from the remainder of the property in the rear of the land hereby conveyed.' " (Emphasis therein.)

On December 21, 1967, the Amabiles acquired all of the original tract except the portion of Parcel 3 now owned by the Winkles.

The Winkles, shortly after their acquisition, had a contractor improve what they believed to be their

right-of-way. The Amabiles, in the meantime, proceeded with the construction of an apartment house. A mortgage to secure a construction loan was executed June 17, 1971. Site preparation for the Amabiles' project cut off the Winkles' access on November 6, 1971. Counsel for the Winkles placed the Amabiles on notice as to the Winkles' claim of easement 11 days later. This suit was docketed March 9, 1972. It is conceded that the building of the Amabiles which it is said now blocks that which the Winkles claim as the location of their easement was actually begun and completed after suit was docketed.

The chancellor concluded:

"This Court finds on the testimony and the other evidence introduced (1) that the right-of-way referred to in the deed from Haines to Kirkwood was located as indicated on the Podolak plat (Complainants' Exhibit 8A) and that this right-of-way led to and was connected with the right-of-way referred to in the deed from Haines to Schotta which was located as indicated on the topographic survey plat made by Purdum and Jeschke on December 19, 1967, which right-of-way led out to the northwestern boundary of the Haines tract to Fells Lane or Fells Avenue, as shown on the Purdum and Jeschke plat (Complainants' Exhibit 12), (2) that the Complainants, Mr. and Mrs. Winkles, are entitled to the use of these rights-of-way as an easement appurtenant to their property and as a means of egress from and ingress to their property from Fells Avenue, (3) that the Respondents, Mr. and Mrs. Amabile, had constructive notice of such easements for the pur- poses aforesaid by virtue of their record title (as a matter of fact their title deed described the conveyance to them as being subject to the rights- of-way granted and reserved in the deeds from Haines to Schotta and Haines to Kirkwood) and (4) that, although the physical location of the

right-of-way leading into the Kirkwood prop-
erty was not visible and apparent, as the other
right-of-way was, to the Respondents when they
purchased their property, Mr. Amabile was put on
actual notice of the Winkles' assertion of right to its
use as they had subsequently improved it. Just why
Mr. Amabile chose to proceed, under these cir-
cumstances, with his grading and construction is
a mystery to this writer."

The "topographic survey plat made by Purdum and Jeschke
on December 19, 1967," referred to by the chancellor, is also
directed to be reproduced as a part of this opinion. It
embraces all the land owned by the Amabiles. The building
shown on it east of the roadway there delineated running
from Fels Lane to Court House Drive is said to have been
located on Parcel 2. The trial court concluded that "a further
hearing w[ould] be necessary to determine the form of relief
to be granted." After that hearing, the trial judge said in his
opinion:

"Under the circumstances, this Court finds that
the action of the defendants, Mr. and Mrs. Amabile
in building structures on the rights-of-way, to the
use of which the plaintiffs were entitled, was not
the result of an innocent mistake. Mr. and Mrs.
Amabile had constructive and actual notice of the
existence of the rights-of-way in question across
their property by virtue of their title deed as well as
actual notice. And, as this Court observed in its
opinion, although the particular location of the
right-of-way leading from the property of Mr. and
Mrs. Winkles may not have been visible when the
property was first purchased, Mr. Amabile was put
on notice of the claim of Mr. and Mrs. Winkles
when they graded and placed stone upon the road
which they claimed was within the right-of-way.
Mr. Amabile was also warned both by Mrs. Winkles
and by [counsel for the Winkles] that he was
encroaching on, and interfering with, the use of the

right-of-way. In the face of such knowledge and warnings, Mr. Amabile apparently chose to go ahead in reckless disregard of the asserted rights of Mr. and Mrs. Winkles and proceeded to block the rights-of-way and obliterate the road which Mr. and Mrs. Winkles had laid out. He did so at his peril."

He determined that the Winkles were entitled to an injunction as prayed. Counsel for the Winkles was directed "to submit an appropriate decree." By the decree the Amabiles were "enjoined from obstructing, closing, or attempting to obstruct or close the right-of-way . . . referred to in these proceedings, the course and location of said right-of-way . . . being shown and designated on a plat of a survey made by Leon A. Podolak and Associates and filed as an exhibit in these proceedings, and" the Amabiles were "enjoined and required to remove from the said right-of-way . . . all obstructions which they . . . ha[d] placed thereon, or caused to be placed thereon, which deny or hinder the free passage thereon and free use thereof by the [Winkles] as an easement . . . appurtenant to the property owned by them and more particularly described in these proceedings . . . ."

The Amabiles appealed to the Court of Special Appeals. It modified the decree by adding at the end of the first paragraph of the decree which we have quoted, after the word "and":

"on a topographic plat prepared by Purdum and Jeschke dated December 19, 1967 and also filed as an exhibit in these proceedings, and."

Otherwise, the decree was confirmed. This addition purported to fill the gap which otherwise existed and which we shall later mention.

In this Court the Amabiles first complain relative to the modification of the decree, saying that the granting of this affirmative relief in the absence of a cross-appeal was unauthorized. However, in their brief in the Court of Special Appeals (through other counsel) they argued:

"The Amabiles submit that the lower court erred in ordering that the 'course and location' of the right of way which it enforced should be as 'shown and designated' in the Podolak plat. (Decree below . . . paragraph (1)) That plat does not designate an entire right of way. The greater portion of the Amabile property is not traversed by the right of way lines shown thereon. The decree below does not provide how the gap is to be filled. One seeking to comply with the decree could not determine from the plat the particular path required to be kept clear.

"All that appears on the plat are indications of the ends of a right of way."

It was pursuant to that argument that the decree was modified. Accordingly, the contention that the modification was unauthorized is without merit.

The Amabiles next argue in interrelated contentions that (1) they "should have the benefit of the balancing of the equities because of the extreme hardship to them from the enforcement of the injunctive order with comparatively little benefit to the [Winkles] especially where the evidence shows the [Winkles] have not acted in an equitable manner"; (2) "the extension of the decree across the remaining Amabile property without testimony concerning the obstructions to be removed was unjustified"; and (3) "the evidence supporting a finding of where the 'original right of way' was located was not of such clarity as to find the [Amabiles] guilty of willful conduct barring them from the doctrine of balancing the equities."

The answer to these contentions of the Amabiles rests in a large degree upon the mandate of Maryland Rule 886 since the chancellor specifically found the action of the Amabiles "in building structures on the rights-of-way . . . was not the result of an innocent mistake," and that they "had constructive and actual notice of the existence of the rights-of-way in question across their property . . .," in which finding he was not clearly in error.

In response to the suggestion by the Amabiles that they provide a right-of-way to the Winkles which would be less objectionable to the Amabiles than that ultimately specified in the decree, the chancellor correctly cited *Columbia Hills v. Mercantile,* 231 Md. 379, 382, 190 A. 2d 635 (1963), and *Lichtenberg v. Sachs,* 213 Md. 147, 131 A. 2d 264 (1957).[1] In the latter case, Judge Prescott said for the Court:

> "The request that the plaintiffs be allowed to relocate the defendant's right of way and permitted to pay him damages for such relocation amounts to a request that private property be taken for private use. No court has authority to compel the owner of land to surrender his property to another person, lacking the power of eminent domain, in exchange for a sum of money; because, the taking of one person's property for the private use of another, even with full compensation, is a deprivation of property without due process of law in violation of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the Constitution of the United States. *Easter v. Dundalk Holding Co., supra,* p. 307 of 199 Md." *Id.* at 152.

It must first be noted that an imprecisely described easement may be precisely located by user. *Taylor v. Solter,* 247 Md. 446, 452-53, 231 A. 2d 697 (1967); *Weeks v. Lewis,* 189 Md. 424, 427, 56 A. 2d 46 (1947); *Sibbel v. Fitch,* 182 Md. 323, 326-27, 34 A. 2d 773 (1943); *Stevens v. Powell,* 152 Md. 604, 608, 137 A. 312 (1927); and 25 Am.Jur.2d *Easements and Licenses* §§ 66 and 67 (1966).

The law relative to the doctrine of comparative hardship in a case such as this was summed up by Judge Delaplaine in *Easter v. Dundalk Holding Co.,* 199 Md. 303, 86 A. 2d 404 (1952), where he said for the Court:

> "[I]n the administration of remedies and relief, courts of equity are solicitous to work out the

---

1. In both of those cases decrees by the trial judge who sat in this case were affirmed by this Court.

equities and justice of a cause. The courts aim to avoid the granting of injunctions when they would produce injustice, great hardship, or public or private mischief. Thus it is an accepted rule that where a landowner, by innocent mistake, erects a building which encroaches on adjoining land, and an injunction is sought by the owner of the land encroached upon, the court will balance the benefit of an injunction to the complainant against the inconvenience and damage to the defendant, and where the occupation does no damage to the complainant except the mere occupancy of a comparatively insignificant part of his lot, or the building does not interfere with the value or use of the rest of his lot, the court may decline to order the removal of the building and leave the adjoining landowner to his remedy at law. *Hasselbring v. Koepke,* 263 Mich. 466, 248 N. W. 869, 873, 93 A.L.R. 1170; *Mary Jane Stevens Co. v. First National Building Co.,* 89 Utah 456, 57 P. 2d 1099, 1126." *Id.* at 305.

The key words are "innocent mistake." As it is put in W. DeFuniak *Handbook of Modern Equity* § 22 at 50 (1950), "it will be found that if the defendant's act is wilfully tortious or is committed with knowledge of the plaintiff's right, the courts will refuse to balance the equities or conveniences and will grant the equitable relief sought." *See also Chevy Chase Village v. Jaggers,* 261 Md. 309, 320, 275 A. 2d 167 (1971) (relative to restrictive covenants); *Columbia Hills v. Mercantile, supra,* 231 Md. at 381; *Grubb v. Guilford Ass'n,* 228 Md. 135, 140, 178 A. 2d 886 (1962) (relative to a restrictive covenant); *Hanley v. Stulman,* 216 Md. 461, 468-69, 141 A. 2d 167 (1958); *Dundalk Holding Co. v. Easter,* 215 Md. 549, 555-56, 137 A. 2d 667, *cert. denied,* 358 U. S. 821 (1958); *Lichtenberg v. Sachs, supra,* 213 Md. at 151; 42 Am.Jur.2d *Injunctions* § 58 at 801 and § 60 at 804 (1969); and Annot., 28 A.L.R.2d 679, § 8 at 706-09 (1953).

The situation existing here is much different from that in

the *Dundalk* cases. There a surveyor gave his considered opinion that the boundary was located in a certain place. Amabile's surveyor was not employed specifically to determine the location of the easement. He simply said that he was unable to locate it. The Amabiles knew or should have known through their title papers of the existence of the easement across the land. They had actual knowledge of the location of that easement when and as claimed by the Winkles. The only opinion that would have justified them in obliterating the roadway constructed by the Winkles would have been a definite opinion as to a specific location of the easement elsewhere. In this state of uncertainty they proceeded to obstruct the route claimed by the Winkles, an act found by the chancellor to have been no innocent mistake. Their action was similar to that in *Sokel v. Nickoli*, 347 Mich. 146, 79 N.W.2d 485 (1956). That case involved a disputed boundary between the land of the litigants. When the plaintiffs learned that the defendants planned to build a garage encroaching upon the disputed 5.5 foot strip, they protested to the defendants and plaintiff's counsel warned defendants against proceeding. The chancellor refused the plaintiff's request for injunctive relief on the ground that the encroachment was unintentional and the cost of removing the encroachment was disproportionate to the damage to plaintiff. The Supreme Court of Michigan held, however, that the chancellor's determination that the encroachment was unintentional was erroneous, stating:

"It was in fact wilfully calculated both as to risk and purpose. [Defendant], knowing the boundary stood in sharp dispute, was determined on forcing the plaintiffs to sell (or exchange) enough property to permit construction of the house and garage as planned and built by him. The plaintiffs were just as determined, and rightfully so it turns out, on resistance. They have an undoubted right to the use and enjoyment of their property as owners thereof. The decree below denies them such right. Nothing further need be said with respect to the equity of the case." *Id.* at 151-52.

Given the facts determined by the chancellor in this case, a determination in which we do not conclude that he was clearly in error, the chancellor correctly decided that the doctrine of comparative hardship was not applicable.

In their brief the Amabiles conceded "the existence of *a* right of way because the record probably contains sufficient evidence from which the finding that some right of way exists is not clearly wrong." (Emphasis theirs.) From our examination of the plats we are not certain that the terminus of the right-of-way shown on the Podolak plat is the east side of the roadway shown on the topographic survey plat made by Purdum and Jeschke on December 19, 1967. Consequently, we are of the opinion that the interests of justice would be best served if we invoked Rule 871 a and remanded this case to the chancellor for the purpose of having him make any amendment in his original decree he may find necessary to carry out the conclusions reached by him in his opinion.

> *Judgment of the Court of Special Appeals vacated; remanded to the Court of Special Appeals for the purpose of remanding to the Circuit Court for Howard County for further proceedings consistent with this opinion without affirmance or reversal; costs to be paid by the appellants.*

OUTLINE SURVEY
AND
RIGHT OF WAY LOCATION
JOSEPH T. WINKLES PROPERTY

Duncan and Goschke Plat

Topographic Survey
Griffith Property
2nd Election District
Howard County, Md.
Dec. 19, 1967   Scale: 1" = 5