Mary E. GRIFFIN, Individually and as executrix of the Estate of Stanley R. Griffin, deceased, Appellant,

v.

RED RUN LODGE, INC., Appellee.

No. 78–1606.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1979.

Decided Nov. 29, 1979.

Arold H. Ripperger, Baltimore, Md. (Brooke & Ripperger, Baltimore, Md., on brief), for appellant.

George F. Pappas, Baltimore, Md. (H. Russell Smouse, Baltimore, Md., on brief), for appellee.

Before BUTZNER, RUSSELL and MUR-NAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Mary E. Griffin, individually and as executrix of her husband's estate, sought, in a diversity action, injunctive relief and mone-

tary damages for the blocking by a neighboring landowner of an easement of ingress and egress. The district court declined to grant equitable relief because there had been no sufficient showing of intentional and willful invasion by defendant of plaintiff's right-of-way or easement. While recognizing that the plaintiff was entitled to some damages for the violation of her rights, the district judge granted a motion to dismiss because actual damages proven did not amount to the jurisdictional requisite sum (an amount in excess of $10,000) under 28 U.S.C. § 1332(a) and the basis for an award of punitive damages had not been made out.

There is little dispute as to the facts. The Griffins in 1965, by deed recorded among the land records of Garrett County, Maryland, purchased several lots, aggregating in all less than one acre, fronting on Deep Creek Lake. The 1965 deed also conveyed all rights of the grantors "to use in perpetuity as a means of outlet from and as an access to said lots, the existing roads leading therefrom in a Northwesterly and Southwesterly direction to the road's intersection with the county road  .  .  .". The defendant in 1972 purchased and subsequently developed a substantially larger parcel in the vicinity of the Griffins' lots. The parcel was one over which the easement of ingress and egress ran.

Prior to the spring of 1975 the Griffins and others improved and made use of the existing road across defendant's parcel.

Development plans of the defendant included the placement of tennis courts across the existing road and the construction in different locations of a road or roads to accommodate traffic previously utilizing the way of ingress and egress of the plaintiff. In the spring of 1975, the tennis courts and some related banks were constructed by defendant, effectively preventing use of the Griffins' right-of-way. They first learned of the obstruction on the Memorial Day weekend in 1975. Prior to learning of the obstruction, they were never consulted by the defendant nor did they ever agree to a relocation of their existing easement.

### Injunctive Relief

Without disputing that its actions had infringed on rights of the Griffins, the defendant opposed the requested equitable relief of a mandatory injunction to restore and reopen the right-of-way on the grounds that its actions had not constituted a willful interference with the plaintiffs' rights. In that connection, defendant's president testified that he checked with the defendant's attorney, asked him if it was legal to put a road in, and received advice that it was legal to do so. He further testified that the primary purpose in changing the road was to eliminate a road that was unsightly, to make a recreation area, to beautify the area, and to give better access generally to those in the vicinity.

On the basis of the testimony that there had been reliance on legal advice, the district judge concluded that the action of destroying Griffins' easement was not shown to be willful and determined that injunctive relief should not be granted, but that the plaintiff should be restricted to an action for damages. It appears that Judge Young was applying the doctrine of comparative hardship as evolved in the cases of *Lichtenberg v. Sachs,* 213 Md. 147, 131 A.2d 264 (1957), *Lichtenberg v. Sachs,* 200 Md. 145, 88 A.2d 450 (1952), *Easter v. Dundalk Holding Co.,* 199 Md. 303, 86 A.2d 404 (1952), and *Dundalk Holding Co. v. Easter,* 215 Md. 549, 137 A.2d 667 (1958), cert. denied, 358 U.S. 821, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958), *reh'g denied,* 358 U.S. 901, 79 S.Ct. 219, 3 L.Ed.2d 151 (1958). However, the circumstances which those cases suggest may permit application of the doctrine of comparative hardship to deny injunctive relief come nowhere near the circumstances in the present case. *Easter* involved a situation in which an adjoining landowner, on constructing a building, innocently, in reliance on an independent surveyor's location of the boundary, encroached upon his neighbor's land. The encroachment was less than one foot. It did not materially interfere with the enjoyment by the neighbor of

his rights in his land. The neighbor in an earlier case, *Dundalk Holding Co. v. Easter,* 195 Md. 488, 73 A.2d 877 (1950), had obtained a judgment in an action of ejectment, which was affirmed by the Maryland Court of Appeals. In *Easter v. Dundalk Holding Co.,* 199 Md. 303, 86 A.2d 404 (1952), the encroacher sought, but was denied equitable relief from enforcement of the judgment at law. By way of dictum, the court stated:

> "Thus it is an accepted rule that where a landowner, by innocent mistake, erects a building which encroaches on adjoining land, and an injunction is sought by the owner of the land encroached upon, the court will balance the benefit of an injunction to the complainant against the inconvenience and damage to the defendant, and where the occupation does no damage to the complainant except the mere occupancy of a comparatively insignificant part of his lot, or the building does not interfere with the value or use of the rest of his lot, the court may decline to order the removal of the building and leave the adjoining landowner to his remedy at law."

*Id.* at 305, 86 A.2d at 405. Then, in *Dundalk Holding Co. v. Easter,* 215 Md. 549, 556, 137 A.2d 667, 671 (1958), *cert. denied,* 358 U.S. 821, 79 S.Ct. 34 (1958), *reh'g denied,* 358 U.S. 901, 79 S.Ct. 219, 3 L.Ed.2d 151 (1958), the court relieved the encroacher of the onerous responsibility of removing the encroachment, on the grounds that he would be unduly penalized:

> "Firmly established are the doctrine of comparative hardship and the right to refuse a mandatory injunction to the invaded owner, if the mistake is innocent and the damages to the offender tip the equitable scales unduly against him because the invasion and the benefit to the injured owner are slight."

In the first *Lichtenberg* case, the plaintiff sought and obtained an injunction against a landowner's interference with the use by the plaintiff of a right-of-way as laid out from the plaintiff's land through certain land of the landowner. In the second *Lichtenberg* case, it appeared that the unsuccessful landowner had ignored the injunction and had proceeded to develop the land, constructing two houses encroaching on the right of way, each by about one foot, leaving the right-of-way passable and a third house which totally blocked the right of ingress and egress. The landowner then sought a declaratory decree that the doctrine of comparative hardship should be applied to preclude equitable relief in the way of removal of the obstruction. The court emphasized that the doctrine of comparative hardship only applies where it is established by the violator of the easement that his action was no more than an innocent mistake. The court pointed out that constitutional principles would preclude a decision that one landowner could, in the interests of improving his own property, require the adjoining landowner to surrender a specific right-of-way in return for relocation elsewhere and for appropriate monetary compensation:

> "They now request this Court to require that the defendant submit to a relocation of the right of way, and accept consequent damages for its relocation. Even if this Court were inclined, under the above circumstances, to grant such relief, it has no authority to do so. There are constitutional barriers that definitely prevent its granting. The request that the plaintiffs be allowed to relocate the defendant's right of way and permitted to pay him damages for such relocation amounts to a request that private property be taken for private use. No court has authority to compel the owner of land to surrender his property to another person, lacking the power of eminent domain, in exchange for a sum of money; because, the taking of one person's property for the private use of another, even with full compensation, is a deprivation of property without due process of law in violation of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the Constitution of the United States."

213 Md. at 152, 131 A.2d at 266–67.

In *Hanley v. Stulman,* 216 Md. 461, 141 A.2d 167 (1958), the Maryland Court of Ap-

peals again blocked an effort by a developer to relocate an inconvenient easement over the opposition of the easement owner. A contention of "undue hardship" was given short shrift. The subject was again before the Court of Appeals in *Columbia Hills Corp. v. Mercantile-Safe Deposit & Trust Co.,* 231 Md. 379, 382, 190 A.2d 635, 638 (1963). The easement involved was by grant; however recordation was delayed and in the interim the owner of the servient property substituted a new entrance onto a busy highway for the one provided for in the easement grant. The Court first recognized that, had the instrument granting the easement been timely recorded, it would have constituted constructive notice under Annotated Code of Maryland, (1957) Art. 21, § 1.[1] It went on to uphold the lower court's finding that the failure to record was immaterial since the servient owner's officers had actual notice of the physical existence of the easement, "so as to put the appellant on inquiry as to the rights of the appellee, and were charged with notice of such rights". The court then disposed summarily of "the contention that the injunction subjects appellant to great injury and affords appellee comparatively little benefit", saying: "However, all that does not change the fact that in both instances there was an attempted unconstitutional taking of property by a private person for private purposes".

Once again, in the recent case of *Amabile v. Winkles,* 276 Md. 234, 347 A.2d 212 (1975)[2] the highest Maryland court refused to apply the doctrine of comparative hardship when asked by the owner of the servient estate to do so. There, the right-of-way was blocked by construction of an apartment house. The finding of the Chancellor that construction of the apartment house "was not the result of an innocent mistake" was deemed dispositive. The Maryland Court of Appeals stated: "The key words are 'innocent mistake.'" *Id.* at 242, 347 A.2d at 216.

■ To say that the action of the defendant here was "not willful" is not the same as saying it was "innocent". In the first place, it should be observed that a test of "non-willfulness", because of the emphasis introduced by the negative "not" or "non" naturally leads to the placing of the burden on the easement holder, which is where Judge Young placed it here. Instinctively, we feel that the burden should fall on the party who must prove the positive. Requiring proof of a negative is something we shun. If the test, on the other hand, is "innocent", the burden more naturally rests with the person who has obstructed the easement.[3]

In the second place, the two terms "non-willfulness" and "innocence" do not have precisely the same connotation. Something may be non-willful without being innocent. The present case affords a good example of the difference. To establish "innocence" defendant would have to show it reasonably had no notice of the Griffins' rights, or that, with knowledge of those rights, it made a good faith effort to locate an improved road exactly on the path of the easement, but strayed from that path because of a good faith error by an independent surveyor as to the boundaries of the easement. On the other hand, non-willfulness might be established if defendant proved that, while it knew of plaintiff's rights, it honestly, if erroneously, felt that it was justified in

---

1. Now Real Property Article § 3–101. "Recording of an instrument under this section gives constructive notice of the transfer." *Bourke v. Krick,* 304 F.2d 501, 503 (4th Cir. 1962).

2. No one of the three highly relevant cases of *Amabile v. Winkles, Columbia Hills Corp. v. Mercantile-Safe Deposit & Trust Co.* and *Hanley v. Stulman* was cited by either of the parties in their briefs in this Court. Presumably, therefore, they were not called to the attention of the district court. Counsel are reminded of their responsibility to bring pertinent authorities to the attention of the Court whether they deem them helpful or harmful to the positions of their respective clients.

3. All this merely illustrates how much we are guided by the sounds of words, not pausing always to ponder their exact meanings. "Innocent" literally derives from the combination of two words signifying "not harmful". Yet its "negative" characteristic has been submerged.

making a slight alteration in the easement's course to accommodate important objectives of defendant. Yet that would not prove "innocence". Nor, under Maryland law, would it permit application of the doctrine of comparative hardship.

Furthermore, even with "innocence" proven, defendant would not necessarily be home. The Maryland cases indicate that, in addition to innocence, there must be proof that interference with the enjoyment by the holder of the easement of his rights was merely slight, leaving enjoyment of the rights essentially unimpaired. Under the cases, if the tennis courts built by defendant had impinged by a foot on the easement, leaving it still passable, the "de minimis" requirement for application of the doctrine of comparative hardship might be met. Here, however, the utility of the easement was totally destroyed. Substitution of something just as good or better would, arguably, render the value of the easement right, in its totality, slight. It would not, however, establish what the cases require: proof that interference with the right was minimal. Slight interference with a right is not the equal of total interference with a slight right. The law protects one's enjoyment of one's rights, both great and small, and lack of value in the eyes of others is not what counts. The owner is entitled to value the right differently.

Because he applied the wrong test for determining whether the doctrine of comparative hardship could have any pertinence, we vacate and remand for a further consideration by Judge Young. To aid him in his consideration of the matter, we suggest that he give consideration to the following:

1. The constructive notice with which defendant was charged under the Maryland recordation statute may prove an insuperable obstacle to the establishment of innocence. A relevant question would be whether defendant, on purchasing the servient property, obtained a title search, and, if so, whether it disclosed the easement. Failure of a developer to pursue so commonplace and prudent a course would hardly be compatible with innocence. Even if a title report were obtained, and failed to disclose the easement, constructive notice of the deed would still exist, and the significance of the defective title report here might be small, though perhaps it might create rights of defendant over against the preparer of the title report.

2. The easement was evidently plainly visible to defendant before it was obstructed. Defendant's purpose was, in part, to eliminate a road that was unsightly. *Columbia Hills Corp. v. Mercantile-Safe Deposit & Trust Co., supra,* would seem therefore, to require a grant of injunctive relief to plaintiff.

3. The reliance on counsel's advice in the present case seems to afford no evidence of innocence. The advice did not even concern the question of whether the defendant had the right to obstruct the easement. According to defendant's president "I asked him if it was legal for us to put a road in there, and he said it was". Obviously the defendant could put in as many additional roads on its property as it wished, so long as it did not interfere with the use of the existing road by plaintiff. Hence, the legal advice sought and received was irrelevant to the issue here posed. To approve the putting in of one road is not to condone the knocking out of another.

Even if on remand it develops that the legal advice in fact addressed the issue of whether the plaintiff's easement could be completely obstructed, we are doubtful that such advice could have helped establish "innocence". Reliance on an attorney's advice is normally available to negate willful wrongdoing only where the advice has been based on a full disclosure of relevant facts. As a minimum, the proof needed to establish such a basis would also necessarily have to establish actual notice to and actual knowledge by defendant of the easement prior to the actions which blocked it. *Columbia Hills Corp. v. Mercantile-Safe Deposit & Trust Co., supra,* would then seem dispositive. The attorney whose advice was sought was not called as a witness, so the basis of any advice he may have

given is not established. The existence of the plaintiff's easement is so clear from the documents and the rule that one may not block an easement even if one provides a "better alternative route" is so firmly established that it seems improbable to the point of near impossibility that any sound advice based on a fair disclosure of the facts could have been given to the effect that the easement could have been blocked.[4]

In that connection, the district judge, on remand, should give consideration to the statement contained in the affidavit of the defendant's president dated July 24, 1976 and repeated in the proposed pretrial order of June 17, 1978:

> "That all of the lot owners from the original subdivision were contacted personally, including Stanley R. Griffin, and all have expressed satisfaction and approval of the new access road, except Stanley R. Griffin, whereupon Red Run Lodge, Inc. offered to improve the Griffin driveway in any manner he choose, either by regrading the same or by providing a new entrance at a different location, all of which he refused."

That statement is not explicit as to whether the contact with lot owners was prior or subsequent to the building of the tennis courts. If, indeed, it was prior thereto, a finding of innocence would seem foreclosed regardless of other considerations. The fact that defendant felt it necessary to make such contacts would demonstrate an awareness of the rights of the lot owners, including the Griffins.

### Damages

The trial of plaintiff's claim for damages proceeded before a jury. At the conclusion of the evidence, defendant moved to dismiss on the grounds that (a) actual damages proven were substantially less than $10,000 and (b) no sufficient evidence of malicious

behavior had been shown to sustain any award for punitive damages. Defendant asserted that the jurisdictional amount of 28 U.S.C. § 1332(a) was not met. Plaintiff's counsel resisted the motion simply on the grounds that there was evidence to support a verdict in excess of $10,000. Hearing no other reasons and expressing a regret at the result since he regarded the plaintiff as entitled to some damages for the invasion of her rights, Judge Young granted defendant's motion.

■ In doing so, he committed plain and prejudicial error. It is well established that where a plaintiff joins several claims against a defendant, and one of them satisfies the jurisdictional amount requirement, jurisdiction is present for all counts, including those for which the amount in controversy is patently less than $10,000. Even if no single claim is for an amount in excess of $10,000, if the aggregate amount of all claims is in excess of $10,000, jurisdiction exists for each count. *Stone v. Stone*, 405 F.2d 94 (4th Cir. 1968); 1 Moore's *Federal Practice*, ¶ 0.97; 6 Wright and Miller, *Federal Practice and Procedure*, § 1588.

■ Once jurisdiction exists, subsequent events, such as the determination that one of the aggregated claims was without merit, do not destroy the jurisdictional basis to dispose, on the merits, of claims of $10,000 or less. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Lynch v. Porter*, 446 F.2d 225, 228 (8th Cir. 1971); *Stewart v. Shanahan*, 277 F.2d 233, 236 (8th Cir. 1960); 1 Moore's *Federal Practice*, ¶ 0.91[3].

■ In the present case, there was no insufficiency as to jurisdictional amount with respect to the request for injunctive relief. Judge Young dealt with it on the merits. He did not dismiss it for lack of jurisdiction. Nor, given the substantial na-

---

4. The economics of situations such as the present one, where developers might have much to gain or lose by the opinion expressed, make us reluctant to accept a conclusion that a property owner, clearly barred from disturbing an easement across his land, can better his position by getting a legal opinion, faulty in its

conclusion, that he may destroy the rights of the easement holder. It is not desirable to extend the rule which makes a lawyer's opinion evidence of non-willfulness for purposes of determining degree of guilt or liability to permit a lawyer to confer a positive benefit on his client by giving incorrect advice.

ture of the actions taken by the defendant in blocking plaintiff's right-of-way and the obvious extensive expense which would be involved in restoring the right-of-way, could it reasonably have been held that plaintiff's statement in the complaint and amended complaint that the amount in controversy exceeds the sum of $10,000 should be questioned as lacking in good faith. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961).

In *T.S.C. Motor Freight Lines v. Leonard Truck Lines, Inc.*, 4 F.R.D. 366, 367 (W.D.La. 1945), plaintiff lost on the merits in a suit for specific performance. The court discussed the jurisdictional consequences had there been an alternate demand for damages less in amount than the jurisdictional limit and stated:

> "If the suit for specific performance was filed in good faith and the value in controversy was sufficient to support jurisdiction, then the fact that the alternative demand of damages was for less than $3,000 would have made no difference." [5]

Although the grounds for jurisdiction of the damages claim here indicated were not put forward by the plaintiff below, it is appropriate for this Court to call attention to it on its own, especially since the matter must be remanded for other reasons. *See Stone v. Stone, supra*, at p. 96, where aggregation of claims was relied on to establish jurisdiction "although neither in the District Court nor on appeal did the parties advert to the question of joinder . . . .". Here, also, the controlling consideration, was not referred to, and, as a consequence, the court was led into error. On remand, plaintiff should be permitted to recover any damages to which she is entitled regardless of the fact that the maximum recoverable amount is $10,000 or less.[6]

With regard to any trial of the damages issue, in light of what has been set forth in this opinion, plaintiff may press again her claim for punitive damages. With respect to it, the district judge should consider whether, regardless of plaintiff's right to trial by jury of the issue,[7] under

---

5. To overcome the inevitable conclusion that there was jurisdiction because of the claim for an injunction, defendant might assert that plaintiff never properly made a claim for injunctive relief, since none was explicitly spelled out in the initial complaint, and plaintiff's two efforts to amend (one in May 1977, the other in June 1978) to add a precise prayer for an injunction were both denied, since filed on eve of trial. (Evidently the trial anticipated for May 1977 was postponed.) However, such an assertion would fail because:

   a. The initial complaint, after praying damages also asked "for such other and further reliefs as to the Court appears just and proper".

   b. The proposed pretrial order jointly presented by the parties on the first day of trial, signed by their counsel (although not executed by the trial judge) set out that: "Plaintiffs seek injunctive relief for reason that aid of Court is required to force Defendant to restore the right of way to the condition that it was in before Defendant destroyed it". While defendant objected in the pretrial order to any amendment to the Complaint in view of the imminence of the trial date, it indicated no opposition to plaintiffs' asserting a right to injunctive relief.

   c. The trial judge clearly accepted that the Griffins had asserted a claim for injunctive relief, stating at the conclusion of the evi-

dence: "In this case, it seems to me quite clear that there is nothing that would justify the equitable relief that you seek, . . . .".

   d. Defendant has not contended that the possibility of injunctive relief was not raised, and, therefore, not before the Court. In its Brief in this Court, on the contrary, defendant argued the merits of the question *whether the evidence would permit injunctive relief.*

6. If plaintiff should pursue only her claim for damages, or should the district court, on the basis of additional facts not heretofore adduced, determine that injunctive relief should not be granted, the damages would be measured on the basis of total loss by plaintiff of the easement right. If injunctive relief is granted, the loss should be measured only for the period between the initial blocking of the easement and the time it is restored.

7. Distribution of trial functions as between court and jury under state law on the basis of whether the matters are "at law" or "in equity" may not control when a federal court is determining whether a party is entitled to a trial by jury. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) requires that plaintiff have a jury trial if she requests it on her damages claim regardless of whether she

Maryland substantive law punitive damages are recoverable at all. Having requested injunctive relief, plaintiff may have waived any claim to punitive damages. If her action is analogized to a suit at equity, she surely has done so. *Superior Construction Co. v. Elmo*, 204 Md. 1, 102 A.2d 739 (1954). If she is deemed to have pursued a legal remedy, with the prayer for injunctive relief secondary, she still may have waived a claim to punitive damages. *See Turner v. Washington Suburban Sanitary Commission*, 221 Md. 494, 506, 158 A.2d 125, 131–32 (1960) where the possibility was pointed out, but resolution of the question was left open. Should the plaintiff seek to introduce evidence sufficient to establish malice which would support an award of punitive damages, the district judge will doubtless have to decide whether there has been, in the circumstances of this case, a waiver.

*VACATED AND REMANDED.*

has proceeded on an equitable basis (primarily pursuing injunctive relief, with the damage claim ancillary thereto) or on a legal basis (declaring for damages, with an injunction additionally requested). However, in diversity cases, the objective since *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) has been to achieve the same substantive result regardless of the forum. Availability *vel non* of punitive damages is clearly a matter of substantive right to be determined by reference to state law. 1A Moore's *Federal Practice* ¶ 0.310, fn. 28; *cf. Bell v. Preferred Life Society*, 320 U.S. 238, 241, 64 S.Ct. 5, 88 L.Ed. 15 (1943).