ADA B. WILMARTH v. ROBERT B. WOODCOCK.

[See 58 Mich. 482.]

*Equity—Encroachment on land by projecting cornice—Boundaries— Location of line of city street—Acquiescence.*

1. Complainant filed a bill to abate an alleged *private* nuisance, caused by the projection of the cornice of defendant's barn over her land, the main question of fact presented being the location of the boundary line between the parties. Defendant interposed a general demurrer, and insisted that complainant had a plain and adequate remedy at law, and that the determination of said boundary line by a court of chancery deprived him of the right of trial by jury under the statute. The demurrer was overruled, and the decree affirmed on appeal (58 Mich. 482), and on remanding the record defendant answered, denying the location of the boundary line as alleged by complainant; which issue was found against him by the circuit judge, who granted complainant the relief prayed for in her bill.

    *Held,* that the question of jurisdiction was settled by the former decision, the case being fully considered, and the authorities presented by defendant's counsel examined by the Court.

    *Held,* further, that something more is involved than a mere dispute about a boundary line, and that an action of ejectment if maintainable by complainant, would not afford her adequate relief; that, if the true line be as claimed by her, the maintenance of the cornice is a *nuisance* in the nature of a *permanent* injury to her property, calling into exercise the jurisdiction of equity, as the only proper tribunal to afford full and adequate relief.

2. Where the line of a city street was located by the authority of the city, and treated, as also division lines of the lots thereon, in conformity therewith, for over thirty years as the true lines of boundary, they cannot be disturbed.

| | |
|---|---|
| 66 | 331 |
| 66 | 375 |
| 66 | 331 |
| 69 | 343 |
| 66 | 331 |
| 93 | 600 |
| 66 | 331 |
| 102 | 484 |
| 66 | 331 |
| 106 | 148 |
| 66 | 331 |
| 111 | 576 |
| 66 | 331 |
| s83NW | 400 |
| 132 | ¹164 |
| 66 | 331 |
| 135 | ¹645 |
| 66 | 331 |
| 151 | ¹558 |
| 66 | 331 |
| f154 | ¹629 |
| 154 | 631 |

Appeal from Kent. (Montgomery, J.) Argued April 28 and 29, 1887. Decided June 16, 1887.

Bill to abate a private nuisance. Decree for complainant affirmed. The facts are stated in the opinion.

*Harvey Joslin,* for complainant.

*More & Wilson,* for defendant.

MORSE, J.   The complainant filed her bill of complaint in the circuit court for the county of Kent, in chancery, setting forth that she was the owner of lot 15 in block 10 of Bostwick & Co.'s addition to the city of Grand Rapids, less six feet from off the north side thereof.   She states that she has owned said lot since June, 1881; that an expensive dwelling-house has been built thereon, the house and lot being now worth the sum of at least $7,000, and she has occupied the same as her homestead since October, 1881.

She further alleges that in 1883 the defendant purchased lot 16, and the 6 feet off of 15; that said lot 16, as conveyed to defendant, is bounded on the north by the south line of Cherry street, in said city of Grand Rapids.   Both of said lots 15 and 16 are bounded on the west by Sheldon street, and on the east by an alley.   Cherry street has been in use as a public street for upwards of 30 years, and during that time the city of Grand Rapids has, from time to time, caused it to be improved as such, and its location *as now used* has not been changed since being surveyed in 1850.

She further alleges that said block 10 is 400 feet in width, and divided into eight lots of 50 feet each in width; that said block is bounded on the south by Maple street, which has been used and improved for a long time; that the owners of the central and southern portions of the west half of said block, upon which the lots in question are situated, have, for the last 25 years and upwards, treated the south line of

Cherry street as the northern boundary line thereof, and built their fences and expensive dwellings on their respective lots accordingly.

She further avers that the defendant, in December, 1884, built a barn on the south side of his premises, adjoining the north line of her lot and very near such line. Before the building of said barn she informed the defendant where the division between the two lots was, as designated by a line fence, and protested against the defendant's building the cornice of his said barn over her land; but, disregarding her rights, the defendant went on and did build a cornice on the south gable end of the roof of his said barn, projecting a portion of it over and beyond the north line of complainant's lot about 16 inches at the west end, and about 6 inches at the east end. This cornice is about 22 feet long, and from 15 to 28 feet at different points above the ground, and is from 4 to 6 inches thick. The same is very unsightly, and depreciates the market value of complainant's lot, and also lessens its value for her use, and is an irreparable injury to her premises.

Complainant prays that this infringement of her rights be decreed unlawful and that it constitutes a private nuisance, and may be abated.

The defendant filed a general demurrer to the bill, which was overruled. On appeal to this Court the action of the court below was sustained. See *Wilmarth v. Woodcock*, 58 Mich. 482.

Upon remanding the record to the court below, the defendant answered. He admits the ownership of the lots as stated by complainant, and the occupation of the same. He avers that the south boundary line of his lot is south of the south line of the cornice upon his barn, and denies that said cornice encroaches upon complainant's premises, or projects over or above her land, but alleges that such cornice is entirely on and over his own premises.

The real contest between the parties upon the hearing, as shown by the proofs, was the location of the boundary line between them. Starting from the south line of Cherry street as now used and improved, the cornice projects over the land of complainant; but beginning the measurement where the defendant claims the south line of Cherry street is, or should be as originally located, the cornice does not encroach upon the premises of complainant.

The court below found, upon the facts, with the complainant, and decreed that the defendant should remove so much of said cornice as projected over the line, and enjoined him from erecting any other cornice or projection where said cornice is situated.

The defendant again comes to this Court.

He claims that the proofs clearly show that the matter of dispute between the parties is the establishment of a boundary line, and he insists that a court of law is the only proper tribunal in which to settle such a dispute. He argues that the complainant's remedy at law is plain, adequate, and complete, and therefore equity has no jurisdiction; that the question is peculiarly one for the intervention of a jury, and that the defendant has a manifest right, under the law, to settle this controversy before 12 of his peers. His counsel urge with earnestness and force, and with some apparent justice, that the determination of the boundary line by a court of chancery cuts off the defendant from the enjoyment of the rights of trial granted ordinarily by statute in such cases. In an action of ejectment he would be entitled to three trials before as many juries, as the exact place where the line between these parties runs is a question of fact rather than of law. In support of this contention upon defendant's part we are referred to the following cases in our own Court: *Wykes v. Ringleberg,* 49 Mich. 567; *Devaux v. Detroit,* Harr. Ch. 98; *Blackwood v. Van Vleet,* 11 Mich. 252; *Bresler v. Pitts,* 58 Id. 347; *Kilgannon v Jenkinson,* 51 Id. 240.

His counsel claim that this issue is not barred by our ruling upon the demurrer; that at that time the bill of complaint alone was before us, and it was then, as a matter of course, taken as true that the title to the soil under this cornice was in the complainant; and, further, that some of the language of the opinion filed intimates that, if it should turn out on the hearing that the boundary line between the premises was really the matter in controversy, the jurisdiction of equity would not be certain.

We are disposed, however, to consider the matter settled by our previous decision in overruling the demurrer. The case was fully considered, and the authorities now presented in favor of defendant's position were then cited, and fully examined by the Court.

A careful examination of these cases will show that each one differs from the one at bar. Something more is involved here than a mere dispute about a boundary line. It is apparent that an action of ejectment, if it would lie upon the part of complainant, would not be adequate for her relief. But she could not well bring ejectment, as she was in possession of the soil, and her possession was not interfered with as far as the land was concerned. It is not entirely clear that she could bring ejectment when she was holding the ground, and the disturbance to her possession was projecting a cornice in the air over it. But, be that as it may, if the true line between the premises be as claimed by complainant, the maintenance of the cornice where it is, is a nuisance, and one in the nature of a permanent injury to her property, if it shall be allowed to continue, which calls into exercise the jurisdiction of equity, as the only proper tribunal to afford full and adequate relief.

If the defendant must lose the chance to litigate the title to this strip of land, about three feet in width, three or four times over before a jury, he can blame no one but himself. When he bought his lot, the complainant was in possession

of the disputed territory, and her fence was upon the line as claimed by her. He was notified by her where the line was, and warned against trespassing upon or over her premises. If he believed the land to be his, as he now claims, he could have brought ejectment against complainant before he built his barn, and determined the ownership. That action would have been a most appropriate one for him to have brought, under the circumstances, and by it could have been settled all that was necessary to be determined at that time. The defendant could then have had as many trials before a jury as the statute and the court might have given him. But he saw fit to determine the ownership in another way. Against the protest of complainant, he pushed this cornice purposely out over the soil claimed by her. She responded by her bill, the only adequate means in her power to maintain and protect her rights as she claimed them in the premises. He must lie in the bed he has made.

We are also satisfied from the proofs that the merits of the case, as far as the title to this disputed strip is concerned, are with the complainant. We shall not go into detail. It is clear that the north line of defendant's premises is bounded by the south line of Cherry street. His deed and the plat both make it so. It is also beyond dispute that by a survey made in 1850 by Wright L. Coffinberry, then city surveyor, and by the authority of the city of Grand Rapids, the south line of said Cherry street was established where it now is, and where complainant claims it ought to be and remain; and also that such south line as then established, and as it now is, has never been changed, but has all these years remained in one and the same place. As the south line of Cherry street now runs, we find between such line and the north line of Maple street the full 400 feet required by the plat, and each of the eight lot-owners having his full quantity of land,— the complainant 44 feet, the defendant 56 feet, and the others the full width, 50 feet, of their lots as platted. It

also appears conclusively from the evidence that the line or division fences upon the west half of block 10, where there are any, between the lot-owners, run almost exactly upon the lines as claimed by complainant, and according to Coffin-berry's survey; and some of these fences, or parts of them, are many years old, and built at an early day upon the presumption that his survey was correct and would stand.

Evidence of a survey was introduced to show that the true line of this street as platted was about three feet south of its present location. I am inclined to believe that Coffin-berry's survey is the more correct of the two, it being made so much earlier, and when old landmarks were more apt to be found and rightly located. But it is certain that as far as this particular section, the west half of block 10, is concerned, the line of Cherry street as it now stands, and the division lines of the lots thereon, in conformity therewith, have been treated for over 30 years as the true lines of boundary. They cannot now be disturbed. The defendant has, as it is, all the land he is entitled to under his conveyances; and to accommodate his claim in this case it would be necessary to change the south boundary line of each lot, which in some places would interfere with buildings, the new lines cutting into them. The true starting point to measure the width of these lots to the south must now be considered to be the present south line of said Cherry street. *Twogood v. Hoyt,* 42 Mich. 609, 612; *Baker v. McArthur,* 54 Id. 139, 143; *Diehl v. Zanger,* 39 Id. 601; *Pratt v. Lewis,* Id. 7; *Flynn v. Glenny,* 51 Id. 580; *Stewart v. Carleton,* 31 Id. 270; *Dupont v. Starring,* 42 Id. 492; *Cronin v. Gore,* 38 Id. 386; *Case v. Trapp,* 49 Id. 59; *Gregory v. Knight,* 50 Id. 61.

The decree of the court below is therefore affirmed, with costs.

The other Justices concurred.