SOKEL *v.* NICKOLI.

1. Injunction—Encroachments.

A mandatory injunction will ordinarily be granted to compel an adjoining landowner to remove an intentional and wilful encroachment, without regard for the relative conveniences or hardships which may result from ordering its removal.

2. Adjoining Landowners—Encroachment.

An encroachment of 4.65 feet by defendant adjoining landowner upon plaintiffs' lot *held*, intentional, where defendant knew the boundary line was in sharp dispute and had attempted to make a purchase or an exchange of enough portions of lot from preceding owner as well as plaintiff, to enable construction of house as planned.

3. Equity—Involuntary Sale of Property.

No court of equity should compel an involuntary sale of property to private individuals, where there are no intervening acts of waiver, estoppel or inequitable conduct of the owner.

4. Adjoining Landowners—Encroachment—De Minimis Non Curat Lex.

An encroachment of 4.65 feet on city lot is not so small an encroachment as to cause application of the doctrine of *de minimis non curat lex*, where it has stopped plaintiff from erection of $22,600 home as planned and contracted for because of denial of building permit.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 2, 1956. (Docket No. 11, Calendar No. 46,803.) Decided December 6, 1956.

References for Points in Headnotes

[1] 1 Am Jur, Adjoining Landowners § 19; 28 Am Jur, Injunctions §§ 22, 147.
[2] 28 Am Jur, Injunctions § 56.
[4] 1 Am Jur, Adjoining Landowners § 19.

Bill by Ernest C. Sokel and Elizabeth Sokel against Toussaint Nickoli, doing business as T. N. Construction Company, Walter Sikora and Veronica Sikora to enjoin encroachment. Decree ordering payment for disseized property. Plaintiffs appeal. Reversed and remanded for further determination of damages and entry of injunctive decree.

*John T. McWilliams,* for plaintiffs.

*Blaine & Dombrowski,* for defendants Sikora.

BLACK, J.  In this case the disseizor seeks to prevail over the disseizee by might—not right—of an accomplished fact.  That fact is completed construction, during pendency of suit brought to arrest and abate such disseizin, on the land theretofore appropriated.  So far he has done right well.  The question is whether equity should now reward his trespass and action *pendente* with a decree for title to that which he has taken and now unlawfully occupies.

August 27, 1951, defendants Walter and Veronica Sikora purchased for $1,000 lot 130 of Whitmore Park subdivision plus easterly adjacent lot 326 of Fordson Heights subdivision.  January 29, 1953, plaintiffs Ernest and Elizabeth Sokel purchased for $4,000 lots 131 and 132 of Whitmore Park subdivision.  Lots 131 and 132 lie immediately west of said lot 130.  The west line of lot 130 and the east line of lot 131 legally coincide.  This common boundary between the separately-owned properties came into vigorous dispute—the Sikoras claiming that it was 5.5 feet west of the line later fixed by decree below and the Sokels claiming same to be in accordance with the line fixed by such decree.  Such dispute started the present suit on its course.

All 4 lots are in Dearborn and all front upon Outer Drive. All longitudinal and materially involved lot lines extend in north-south parallel directions. Outer Drive's direction in the vicinity is southeast and northwest, thus making a diagonal street-front with respect to such lots. House construction paralleling Outer Drive—and such was the plan of defendants' presently considered construction—accordingly requires more east-west building space.

Walter S. Fornay, owner prior to January 29, 1953, of said lots 131 and 132, testified that defendant Walter Sikora approached him (prior to sale of such lots to the Sokels) with a proposal to exchange part of lot 131 for part of lot 130. According to Fornay, Sikora "wanted 6 or 7 feet but it might have been more or less." Fornay refused to consider the proposition. Plaintiff Ernest Sokel testified that defendant Walter Sikora made a similar proposal to him after the Sokels became owners of lots 131 and 132. Sokel in turn rejected the proposal. None of this testimony was denied by defendant Walter Sikora.

In April of 1953 plaintiffs discovered that defendants Sikora planned to build a garage (attached to and forming part of a home constructed by the Sikoras on said lots 130 and 326) encroaching on the disputed 5.5-foot strip to the now stipulated extent of 4.65 feet. Mr. Sokel immediately met Mr. Sikora on the site, at which time the cement footings only, of the planned garage, had been constructed. Each claimed the strip, and the record leaves no doubt as to intention of the respective contenders. Sokel delivered his protest, and Sikora announced that he was going ahead with construction as planned.

May 11, 1953, counsel for the Sokels warned the Sikoras against proceeding with the encroachment.

This bill, for injunctive and related relief, was filed May 25, 1953. The next day an order was issued by Circuit Judge Frank FitzGerald requiring all of the defendants (Nickoli being the Sikoras' builder) to show cause why construction on the strip should not be enjoined. Hearing in pursuance of the show-cause order was conducted before Circuit Judge George B. Murphy on June 22, 1953. Judge Murphy entered an order that day which recites:

"It is ordered that the temporary injunction prayed for in said order to show cause be and the same is hereby denied.*

"It is further ordered that defendants, Walter Sikora and Veronica Sikora, his wife, post a bond in the sum of $2,000 for the purpose of guaranteeing the removal of the incumbrance and help save plaintiffs harmless from damage, if any, on the final determination of this matter."

The case came to trial September 13, 1954, Circuit Judge Toms presiding. October 11th of that year the court's first opinion was filed. The essential part of that opinion is shown in the concluding 2 paragraphs. They read:

"The court finds from the testimony that the easterly line of plaintiffs' lot 131 is as claimed by the plaintiffs, and that the defendants are guilty of encroachment upon plaintiffs' land, as alleged in the bill of complaint and as shown on the survey attached to plaintiffs' bill and marked exhibit D and pre-trial exhibit A.

"An appropriate decree based on this finding may be presented for entry."

Plaintiffs duly proposed a decree in accordance with the foregoing opinion. Defendants moved November 22, 1954, for rehearing. The motion to

---

* Hindsight proves that, if the temporary injunction had been issued rather than denied, the court would not have found itself in unusual predicament 18 months later.

rehear resulted in a second opinion of the chancellor, filed December 20, 1954. The second opinion confirms the result of the first and then goes on to hold:

"The plaintiff has selected his forum and in lieu of ejectment has chosen to come into chancery for relief through a writ of mandatory injunction. This equity writ does not issue as a matter of right, but only as a matter of grace and upon such terms and conditions as the chancellor may consider just. The undoubted fact that the encroachment in this case was unintentional and resulted from no wilful or negligent conduct on the part of the defendant should carry great weight in determining the character of the remedy afforded. There are many cases holding where the damage to the plaintiff is slight or the cost of removing the encroachment is disproportionate, the court may make the plaintiff whole by a money award. This case seems to fall very definitely within that category. The means for alleviating the whole situation without undue damage or inconvenience lies, as was indicated in the court's opinion, within the grasp of these parties.

"An interlocutory decree may be entered determining the fact and extent of encroachment on the plaintiffs' land, and referring the matter to a circuit court commissioner for the taking of testimony as to the value of the land involved in the encroachment, to be used as a basis as a money award for the plaintiffs in a final decree."

A decree in accordance with the above was entered. It requires the Sikoras to pay plaintiffs the sum of $450 and, upon payment being made, requires the plaintiffs to deed the "easterly 4.65 feet of said lot 131" to the Sikoras. Plaintiffs have appealed.

*First:* We agree with plaintiffs' counsel that this case is governed by rules of equity and sense found in *Wilmarth* v. *Woodcock,* 58 Mich 482; *Wilmarth* v. *Woodcock,* 66 Mich 331; *Onen* v. *Herkimer,*

172 Mich 593; and *Longton* v. *Stedman,* 182 Mich 405, and that the decree below should be reversed on authority thereof. Further discussion or assembly of authority is unnecessary, the entire subject having been recently and exhaustively treated in annotation (28 ALR2d 679–751) headed "Mandatory injunction to compel removal of encroachments by adjoining landowner." The annotator at page 705 states in correct summary equity's jurisdiction and duty in cases of present nature. We quote:

"§ 8. — *Intentional or wilful encroachment; effect of notice or warning.*

"Where an encroachment by an adjoining landowner is intentional or wilful, a mandatory injunction will ordinarily be granted to compel its removal, without regard for the relative conveniences or hardships which may result from ordering its removal."[*]

*Second:* The chancellor's primary error is, in our view, seen in the first-quoted paragraph of his second opinion. The encroachment in this case—and by "encroachment" we intend reference to Mr. Sikora's continuation of construction to final completion after warning and commencement of suit—was far from unintentional. It was in fact wilfully calculated both as to risk and purpose. Mr. Sikora, knowing the boundary stood in sharp dispute, was determined on forcing the plaintiffs to sell (or exchange) enough property to permit construction of the house and garage as planned and built by him. The plaintiffs were just as determined, and rightfully so it turns out, on resistance. They have an undoubted right to the use and enjoyment of their

---

[*] *Wilmarth* v. *Woodcock,* 66 Mich 331, is cited by the annotator in support as representative Michigan law. It will be noted that *Wilmarth* was heard first (58 Mich 482) on demurrer and that it was later tried (66 Mich 331) with final decree in favor of the encroached-upon landowner.

property as owners thereof. The decree below denies them such right. Nothing further need be said with respect to the equity of the case.

To recapitulate: The decree before us amounts as suggested in *Wilmarth* (58 Mich 482, 485) to a taking from these plaintiffs of their property without condemnation and without due process. No court of equity should compel or give thought to compelling an involuntary sale of property to private individuals, there being no intervening acts of waiver, estoppel, or inequitable conduct of the owner. Nor can we say that this encroachment is *de minimis*. It has in fact stopped plaintiffs' planned and previously contracted house construction on their lots.*

Reversed and remanded for taking of testimony determinative of the fact and amount of damages plaintiffs have suffered on account of the encroachment, and for entry of decree in accord with the prayer of plaintiffs' bill. Costs of both courts to plaintiffs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and CARR, JJ., concurred.

BOYLES, J., did not sit.

---

* Plaintiffs, having contracted with builder-witness Kolton to construct a home on their 2 lots for $22,600, were denied a building permit on account of such encroachment.