*Kevron Walker v. State of Maryland*, No. 19, September Term, 2022.  Opinion by Eaves, J.

**CRIMINAL PROCEDURE — MOTION TO SUPPRESS — MARYLAND DNA COLLECTION ACT — REMAND**

The Supreme Court of Maryland granted *certiorari* to consider whether "the destruction and expungement provisions of the Maryland DNA Collection Act, Md. Code (2003, 2018 Repl. Vol) Public Safety Art., § 2-511, apply to DNA samples collected from a person pursuant to a search warrant after the person is arrested and charged, or whether the provisions apply only to so-called 'arrestee' samples, as the Act has been interpreted in regulations promulgated by the Department of State Police."  The Supreme Court concluded that the record was unclear as to the whether the trial court made a factual finding as to the origin of the DNA sample at issue and that an exhibit attached to Petitioner's Motion for Reconsideration before the trial court raised a significant factual question concerning the origin of the DNA sample.

The Supreme Court held that, in the interest of justice, a limited remand under Maryland Rule 8-604(d)(1) was warranted for additional factfinding as to the origin of the DNA sample at issue.  The Supreme Court remanded the case to the circuit court for additional factual finding as to whether the DNA sample at issue was recovered pursuant to a search warrant, or as the result of a sample taken upon arrest, or whether the DNA sample was a forensic specimen, recovered from evidence, collected in connection with a different offense, that had previously been linked to Petitioner.

IN THE SUPREME COURT

OF MARYLAND*

No. 19

September Term, 2022

KEVRON D. WALKER

v.

STATE OF MARYLAND

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Opinion by Eaves, J.

Filed: July 28, 2023

* At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
# INTRODUCTION

Deoxyribonucleic acid ("DNA") is the molecule of evidence, containing unique genetic markers packed into our chromosomes. Having a powerhouse impact in criminal investigations, forensic DNA analysis and identification has "an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty." *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 55 (2009); *id.* at 62 ("It is now often possible to determine whether a biological tissue matches a suspect with near certainty.").

Our case law refers to §§ 2-501 to 2-514 of the Public Safety Article ("PS") (2003, 2022 Repl. Vol.) as the Maryland DNA Collection Act (the "Act"). *See, e.g.*, *Varriale v. State*, 444 Md. 400, 407 n.4 (2015). The Act regulates the collection of DNA samples from certain qualifying arrestees and convicted offenders. PS § 2-504. The Act requires law enforcement to collect DNA samples from individuals who are arrested for certain crimes of violence. *Id.*; s*ee Maryland v. King*, 569 U.S. 435, 465–66 (2013) ("[T]aking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment."). One provision of the Act states that generally, "any DNA samples and records generated as part of a criminal investigation or prosecution shall be destroyed or expunged automatically from the State DNA database if[] a criminal action begun against the individual relating to the crime does not result in a conviction of the individual[.]" PS § 2-511(a)(1)(i). Section 2-511(d) goes on to state that "[a]n expungement or destruction of

sample under this section shall occur within 60 days of an event listed in subsection (a) of this section."

This case involves issues related to PS § 2-511. First, we are asked to determine whether PS § 2-511 applies to DNA samples collected pursuant to search warrants. If so, we are asked to determine whether there is an exclusionary rule for violations of PS § 2-511. If we conclude that PS § 2-511 does not apply to DNA samples collected pursuant to search warrants, we are asked to either conclude that the trial court clearly erred in not finding that the instant DNA sample was an arrestee sample[1] or to remand the case to the trial court to determine whether the sample was indeed an arrestee sample.

During a homicide investigation in another case, the State, Respondent, collected a DNA sample from Kevron D. Walker, Petitioner, pursuant to a search warrant and developed a DNA profile of Walker. The DNA profile was added to the Combined DNA Index System ("CODIS").[2] The State charged Walker in connection with the homicide, but ultimately *nol prossed* the charges. Months later, a DNA profile was developed from biological material collected at the scene of the attempted homicide in this case. The DNA

---

[1] The term arrestee sample does not appear in the language of PS § 2-511. It is a term that has been used to describe DNA samples taken when a person is arrested in connection with a crime.

[2] "'CODIS' means the Federal Bureau of Investigation's 'Combined DNA Index System' that allows the storage and exchange of DNA records submitted by federal, state, and local forensic DNA laboratories." PS § 2-501(c)(1). CODIS "consists of three tiers: the National DNA Index System (NDIS), the State DNA Index System (SDIS), and the Local DNA Index System (LDIS)." *Varriale*, 444 Md. at 407 (footnote omitted). "CODIS collects DNA profiles provided by [] laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes." *Id.* at 407 n.5 (quoting *King*, 569 U.S. at 445).

2

profile was added to CODIS and matched Walker's DNA profile. The State charged Walker with attempted first-degree murder and related offenses. Walker filed a Motion to Suppress Evidence, seeking to suppress all evidence obtained as a result of the DNA profile match, contending that the State should not have been able to use his previously taken DNA sample because it should have been expunged under PS § 2-511. Specifically, Walker argued that the DNA sample at issue, the sample allegedly collected from him pursuant to a search warrant in the earlier case, should have been expunged pursuant to PS § 2-511, 60 days after the State *nolle prosequi* the charges. The State argued that PS § 2-511 did not apply because Walker's DNA sample was collected pursuant to a search warrant.

The circuit court denied the Motion to Suppress. The circuit court ruled that that the General Assembly intended PS § 2-511, the expungement provision, to apply only to "arrestee and convicted-offender DNA samples." In ruling, the circuit court stated, among other things, that "[t]he DNA obtained pursuant to the search warrant was collected from the handlebars of a motorcycle believed to have been used in connection with [a] Baltimore City homicide, which DNA sample was entered into CODIS[,]" and that "on July 14, 2018, a DNA sample was obtained from [Walker] pursuant to a search warrant in connection with the Baltimore City homicide investigation and entered into CODIS."

Subsequently, Walker filed a Motion to Reconsider Motion to Suppress, attaching an exhibit with information indicating that the DNA sample matched to the sample from the crime scene was not the product of the earlier murder investigation at all, but rather was a match between "two forensic specimens," with one of the forensic specimens being a

3

gun.[3]  Walker did not make any argument in his motion for reconsideration regarding the import of this exhibit. Nor did the State comment on the exhibit in its response to the motion for reconsideration.  However, the inference can plausibly be drawn from the exhibit that the DNA sample recovered from the crime scene was not matched to a sample collected by search warrant but rather was matched to a forensic sample that had previously been linked to Walker.  The circuit court denied the Motion for Reconsideration without explanation.  Walker entered a conditional plea of guilty to attempted first-degree murder; conspiracy to commit first-degree murder; and use of a firearm in the commission of a crime of violence.  Walker appealed, and the Appellate Court of Maryland affirmed.[4]  *Walker v. State*, No. 433, 2022 WL 1416675, at * 1 (App. Ct. Md. May 4, 2022).

Walker filed a petition for a writ of *certiorari*, which we granted.  481 Md. 2 (2022).  In his petition for certiorari, Walker presented four questions:

1. Do the destruction and expungement provisions of the Maryland DNA Collection Act, Md. Code (2003, 2018 Repl. Vol.) Public Safety Art., § 2-511, apply to DNA samples collected from a person pursuant to a search warrant after the person is arrested and charged, or do those provisions apply only to so-called "arrestee" samples, as the Act has been interpreted in regulations promulgated by the Department of State Police?

2. Did the courts below err in concluding that § 2-511 does not contain an exclusionary rule for violations of the destruction and expungement provisions of the Act?

---

[3] A forensic specimen is a DNA sample collected through the forensic examination process of crime scene evidence.  *Allen v. State*, 440 Md. 643, 660 (2014).

[4] At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

4

3. Assuming, arguendo, that the destruction and expungement provisions in §2-511 apply only to arrestee samples, was the trial court's finding of fact, that the DNA sample at issue here was not an arrestee sample, clearly erroneous; or, in the alternative, if the record is unclear as to whether the DNA sample was an arrestee sample, should the case be remanded to the circuit court for an evidentiary hearing, pursuant to Md. Rule 8-604, so that the court can receive evidence and make findings of fact as to whether the DNA sample was an arrestee sample or was collected from Petitioner pursuant to a search warrant for his DNA?

4. Did the trial court err in denying Petitioner's motion to suppress DNA evidence?

For the reasons explained below, we remand the case under Maryland Rule 8-604(d)(1) to the circuit court for additional factfinding. Although the case raises issues of importance, the record is unclear as to whether the circuit court determined that the DNA sample at issue was recovered pursuant to a search warrant, or was a so-called arrestee sample, or a forensic sample that was recovered from a gun previously linked to Walker. In ruling on the Motion to Suppress, the circuit court stated that there were DNA samples that were entered in CODIS as a result of a sample collected from a motorcycle pursuant to a search warrant obtained during the investigation of a homicide that Walker had been charged with, and as a result of a search warrant executed on Walker "on July 14, 2018," during the same homicide investigation. Both the State and Walker argued at the suppression hearing that the DNA sample at issue was collected from his person pursuant to a search warrant on January 19, 2019, and the exhibit attached to the Motion for Reconsideration presented evidence that the DNA sample was a forensic specimen collected from a gun. However, the circuit court did not make a factual finding as to the origin of the sample at issue that comported with either the State or Walker's position as to the source of the DNA sample at the suppression hearing or later with the information

5

in the attached exhibit in the Motion for Reconsideration. Given that the origin of the DNA sample at issue in this case is at best unclear, we decline to reach the merits of the questions for which we granted certiorari. Rather, we remand the case to the circuit court for additional fact finding as to the origin of the DNA sample at issue.

## II
## BACKGROUND

The record in the circuit court, provides a confusing picture as to the various DNA samples. Below, we outline the relevant facts of the various cases in which Walker was alleged to be involved and the relevant procedural history of the instant case to show how the confusion arose as to the different DNA samples.

### A.    *Facts*

We begin with the case that occurred in July 2018, when Baltimore City police had arrested Walker in connection with its homicide investigation, in which Stephon Gabriel was the victim. Baltimore police collected a DNA sample from Walker incident to his arrest and charging "on or about July 14, 2018." The State filed a five-count indictment in the Circuit Court for Baltimore City against Walker, which included a charge of first-degree murder.

Baltimore City police became aware of Walker's alleged involvement in this homicide case through eyewitnesses and surveillance footage from nearby residences and businesses. Police learned from witnesses that two suspects "were riding on a Black Ca[n] Am Spyder motorcycle moments prior to the shooting." Walker was identified as the shooter, and the second suspect, the driver of the motorcycle, was identified as Romesh

6

Vance. After arresting Walker, police learned that Vance's girlfriend owned a 2016 Can Am Spyder motorcycle and that Vance had driven it in the past. Police went to the shared residence of Vance and his girlfriend and seized the motorcycle. According to police, the recovered motorcycle "look[ed] similar to the motorcycle shown on the surveillance footage which captured th[e] incident." Police obtained a search warrant for the recovered motorcycle on August 28, 2018, and served it on September 4, 2018. Pursuant to this search warrant, police obtained "swabs of suspected DNA" from the motorcycle.

Based on the above information, Baltimore City police applied for a search warrant for Walker's DNA. In January 2019, the police obtained a search warrant for a sample of Walker's DNA "in hopes of obtaining evidence that would further link him to the . . . motorcycle believed to have been used in the murder of Stephon Gabriel[.]" The State thereafter executed the search warrant and collected a second DNA sample from Walker.

On January 23, 2019, the State entered a *nolle prosequi* of the five charges against Walker for the July 2018 Baltimore City homicide. On October 24, 2019, the DNA sample collected upon Walker's arrest on July 14, 2018, was destroyed and all records relating to it were expunged. Walker received notice of this expungement, as the Act requires,[5] on November 6, 2019. There are no records indicating whether the DNA sample collected from Walker pursuant to the January 2019 search warrant was destroyed and if the related sample results were expunged.

---

[5] The Act requires the State to send "[a] letter documenting expungement of the DNA record and destruction of the DNA sample . . . to the defendant and the defendant's attorney at the address specified by the court in the order of expungement." PS § 2-511(e).

We now turn to the case for which Walker filed the instant petition for *certiorari*. On July 10, 2019, at approximately 5:25 a.m., deputy sheriffs responded to a report of gunshots fired around an industrial park in Eldersburg, Maryland. There, deputies found Gilbert Dodd lying on the sidewalk suffering from six gunshot wounds. Although Dodd sustained gunshots to his torso and head, he survived his injuries. Among the items that police recovered from the crime scene were, in pertinent part, swab samples of DNA extracted from human vomit. Forensic analysts developed a DNA profile from the vomit and entered that profile into the statewide DNA database, including CODIS. The purpose for doing so was to determine the identity of Dodd's assailant.

According to an exhibit attached to Walker's Motion for Reconsideration, "a routine search of the State DNA database [] resulted in a high stringency match between *two forensic* specimens" relating to the July 2019 attempted homicide.[6] The match was between the forensic DNA sample derived from the vomit and another forensic DNA sample collected from a homicide that occurred on February 25, 2018. The February 25, 2018, forensic DNA sample was "previously linked" to Walker's DNA. As we discuss

---

[6] According to the FBI, a match stringency determines whether two DNA profiles match. High stringency means that all alleles of the two profiles match. Federal Bureau of Investigation, *Frequently Asked Questions on CODIS and NDIS*, https://www.fbi.gov/how-we-can-help-you/dna-fingerprint-act-of-2005-expungement-policy/codis-and-ndis-fact-sheet (last visited Jun. 21, 2023). "The current standard for forensic DNA testing relies on an analysis of the chromosomes located within the nucleus of all human cells." *King*, 569 U.S. at 442. "Many of the patterns found in DNA are shared among all people, so forensic analysis focuses on "repeated DNA sequences scattered throughout the human genome," known as 'short tandem repeats' (STRs)." *Id.* at 443. "The alternative possibilities for the size and frequency of these STRs at any given point along a strand of DNA are known as 'alleles,' . . . and multiple alleles are analyzed in order to ensure that a DNA profile matches only one individual." *Id.*

8

later, however, during the suppression hearing both the State and Walker proffered to the court that Walker's DNA was in CODIS as a result of the January 2019 search warrant for his DNA. The parties did not mention or address the February 25, 2018, forensic DNA sample.[7] The exhibit attached to Walker's motion for reconsideration describing the "high stringency match between two forensic specimens" is the only document in the record showing a CODIS match on September 11, 2019.

Based on the September 2019 DNA match, the Carroll County Sheriff's Office obtained search warrants for Walker's residence and a sample of his DNA. On October 2, 2019, police arrested Walker, executed the search warrants, and collected Walker's DNA sample. They did so to independently test Walker's DNA sample against the forensic sample derived from the vomit to confirm the results of the CODIS match.[8]

## B.     *Relevant Procedural History*

On October 24, 2019, in the Circuit Court for Carroll County, the State charged Walker in connection with the July 2019 Carroll County attempted homicide investigation with (1) attempted first-degree murder; (2) conspiracy to commit first-degree murder; and (3) use of a firearm in the commission of a crime of violence. Walker thereafter filed a Motion to Suppress Evidence requesting that the circuit court "suppress all evidence obtained from the DNA CODIS match." Specifically, Walker asserted that the DNA

---

[7] It is unclear from the record whether at the time of the suppression hearing Walker's counsel and the prosecutor knew of the February 25, 2018, forensic DNA sample.

[8] "A match obtained between an evidence sample and a database entry may be used only as probable cause and is not admissible at trial *unless confirmed by additional testing.*" PS § 2-510 (emphasis added).

evidence was used unlawfully in violation of PS § 2-511 and the Fourth Amendment of the United States Constitution.

On March 10, 2020, the circuit court held a hearing on the Motion to Suppress. At the hearing, defense counsel explained that the State swabbed DNA from Walker pursuant to the January 2019 search warrant issued in the July 2018 Baltimore homicide case. The State, likewise, said that it "used the DNA collected pursuant to the search and seizure warrant obtained in the investigation of that homicide." The State explained that Walker's DNA "was in CODIS twice[:]"

> Once for the [July 2018] arrest, based on that charge, and the detectives in Baltimore City had his DNA separately pursuant to a search and seizure warrant [in January 2019] where they swabbed to compare to the crime scene. So they have his DNA two times over and for two different reasons.

The parties agreed that the January 2019 search warrant DNA sample from Walker was the DNA sample at issue: the sample that matched the DNA of the vomit left at the Carroll County crime scene. The parties did not address the February 25, 2018, forensic DNA sample, but identified that September 11, 2019, was the date of the CODIS match that gave law enforcement probable cause to obtain a search warrant for Walker's DNA and to arrest Walker for the July 2019 attempted homicide. The only document in the record showing a CODIS match on September 11, 2019, is the match describing the "high stringency match between two forensic specimens."

Walker argued that, under the expungement provision in PS § 2-511, the State should have destroyed his DNA sample, collected through the January 2019 search warrant, in March 2019—within 60 days of the State's *nolle prosequi* of the charges in the

July 2018 Baltimore City case. Walker contended that if the DNA sample had been destroyed in March 2019, the State would not have been able to match and confirm that his DNA was present at the crime scene in Carroll County. In essence, Walker argued that the State would have lacked probable cause to obtain the October 2019 search warrant for his DNA. The State countered that the expungement provision is inapplicable to DNA that the State collects pursuant to a search warrant and applies only to DNA the State obtains under the statute (i.e., for qualifying arrestees and convicted offenders). At the conclusion of the hearing, the court took the matter under advisement.

On March 27, 2020, the circuit court entered a Memorandum Opinion and Order denying the Motion to Suppress Evidence. In the background section of its opinion, the court recounted the various DNA samples involved in this case. The court stated that DNA, obtained pursuant to a search warrant, was collected from the handlebars of a motorcycle and entered into CODIS:

> CODIS generated a match between the DNA sample derived from the vomit [Walker's] DNA. CODIS maintained a record of [Walker's] DNA which had been obtained pursuant to a search warrant issued in connection with a 2018 homicide investigation in Baltimore City. [Walker] was charged in connection with the homicide, but the charges against [Walker] were later *nol prossed*. The DNA obtained pursuant to the search warrant was collected from the handlebars of a motorcycle believed to have been used in connection with the Baltimore City homicide, which DNA sample was entered into CODIS.

The court then stated that "on July 14, 2018, a DNA sample was obtained from [Walker] pursuant to a search warrant in connection with the Baltimore City homicide investigation and entered into CODIS." It is unclear if the court was mistaken as to the origin and nature

11

of the DNA sample collected from Walker on July 14, 2018;[9] or whether the court intended to find, as the parties had proffered, that the DNA sample collected through the January 2019 search warrant was the matching sample. That said, the parties did not dispute that the DNA sample at issue was obtained through a search warrant. But, the court did not make an express finding of fact as to which specific DNA sample generated the match to the crime scene vomit.

The court proceeded to address the legal question before it. The court determined that a DNA sample obtained via search warrant is not subject to expungement because such DNA samples fall outside the scope of the Act. The court stated that "[w]hen PS § 2-511 is viewed in context of the larger statutory scheme, its plain language makes clear that the Legislature intended for the expungement provision to apply only to arrestee and convicted-offender DNA samples." The court determined that a violation of the DNA Collection Act does not require exclusion of unlawfully obtained evidence. The court stated:

> The evidence sought to be suppressed by [Walker] was the DNA sample stored in CODIS in 2018 and the DNA evidence derived from the match to the vomit swab in this case. Neither the Act nor any other rule of law demands or even sanctions the exclusion of such evidence.

The court did not expressly say which DNA sample from the 2018 Baltimore case was the DNA sample that generated the match to the crime scene swab sample.

---

[9] As discussed earlier, the record does not indicate any search warrant DNA sample on July 14, 2018. Instead, the record shows that DNA sample was taken incident to arrest.

12

Walker filed a Motion to Reconsider Motion to Suppress ("Motion for Reconsideration"), attaching six exhibits containing the following information:[10]

- **On or about July 14, 2018:** A DNA sample was taken from Walker when he was arrested in connection with the July 2018 Baltimore City homicide investigation. Walker was charged with first-degree murder, and the indictment had court tracking number 181001449731 and case number 118219019. **Defense Exhibit #4 (Bill of Charges; Criminal Indictment)**

- **On or about August 28, 2018:** Baltimore Police obtained a search warrant for the motorcycle believed to have been used in the July 2018 Baltimore City homicide. On or about September 4, 2018, police served the search warrant and collected swab samples of DNA from the seized motorcycle. **Defense Exhibit #6 (DNA Search Warrant for July 2018 Investigation)**

- **On or about January 19, 2019:** The Baltimore Police Department obtained a search warrant for Walker's DNA to test whether Walker's DNA matched the DNA sample extracted from the motorcycle believed to have been used in the July 2018 Baltimore City homicide. Law enforcement executed the search warrant shortly thereafter. **Defense Exhibit #6 (DNA Search Warrant for July 2018 Investigation)**

- **September 11, 2019:** "A routine search of the State DNA Database [] resulted in a high stringency match between two forensic specimens." The match was between a DNA sample, taken from a gun, that "was previously linked to Kevron Walker," *for an offense on February 25, 2018*, and the vomit DNA sample from the crime scene of the July 2019 Carroll County attempted homicide investigation. **Defense Exhibit #5 (DNA Database Match Notification Letter)**

- **September 30, 2019:** The Carroll County Sheriff's Office obtained a search warrant for Walker's residence **Defense Exhibit #2 (Residence Search Warrant)** and a search warrant for a sample of Walker's DNA **Defense Exhibit #3 (DNA Search Warrant)** relating to the Carroll County attempted murder.

- **October 24, 2019:** The Department of Public Safety and Correctional Services issued a certificate of compliance of expungement. The certificate detailed that the Criminal Justice Information System Central Repository "has complied with the Order for Expungement of Records dated Apr-15-2019" entered in the above-captioned case [of Kevron Walker]." The case number at issue was 118219019 and

[10] For ease in understanding the exhibits, they are ordered by the date of an event or occurrence rather than by their given exhibit numbers attached to the Motion for Reconsideration to illustrate a timeline of the pertinent DNA samples discussed.

listed Walker as the defendant.  The case number on the bill of charges against Walker in the July 2018 Baltimore City homicide case was 118219019.  **Defense Exhibit #1 (Certificate of Compliance; Notice of Expungement)**

- **November 6, 2019:** the State Police notified Walker that it had expunged the record of his DNA sample that it collected from him at the time of his arrest on or about July 14, 2018, in connection with court tracking number 181001449731—the tracking number in the July 2018 Baltimore City case.  **Defense Exhibit #1 (Certificate of Compliance; Notice of Expungement)**

In particular, Defense Exhibit #5 was the DNA Database-Hit Notification Letter dated September 11, 2019, and was signed by a forensic scientist of the State Police Forensic Sciences Division-Pikesville.  The letter stated that "[a] routine search of the State of Maryland DNA Database has resulted in a high stringency match between two forensic specimens."  The letter depicted a side-by-side chart of the two DNA samples.  The first sample had the following pertinent identifying information:

| | |
|---|---|
| **CODIS Spec ID:** | 18016474.1A-B/GUN^ |
| **Agency:** | Baltimore Police Department |
| **Agency Case #:** | 6-180209267 |
| **Offense:** | Homicide |
| **Offense Date:** | 2-25-2018 |

Below the forensic DNA sample, the caret next to the word "GUN" noted that "this DNA profile has been previously linked to Kevron Walker."  None of the identifying information for the first sample had any connection to the July 2018 Baltimore City homicide investigation.

The second sample had the following pertinent information:

| | |
|---|---|
| **CODIS Spec ID:** | GFB38D004/VOMIT* |
| **Agency:** | Carroll County Sheriff's Office |
| **Agency Case #:** | 19003271 |
| **Offense:** | Attempted Murder |
| **Offense Date:** | 7-10-2019 |

14

The identifying information in the letter related to the second sample comports with the information for the July 2019 Carroll County case. The letter shows that the "high stringency match" was between the DNA from crime scene vomit and a DNA profile previously linked to Walker. The DNA sample, noted by the Forensic Sciences Division, is a *forensic* sample that law enforcement extracted from a gun connected to a Baltimore homicide that occurred on February 25, 2018—nearly 5 months before the July 2018 Baltimore City case. The record does not reflect that Walker, in the Motion for Reconsideration, raised any arguments that the notification letter had any connection to the July 2018 Baltimore murder, to the August 2018 search warrant for the motorcycle, or to the January 2019 search warrant for Walker's DNA sample.

On May 15, 2020, the circuit court denied the Motion for Reconsideration without a hearing. The State's Opposition to Reconsideration of Motion to Suppress stated that "[Walker's] request to reconsider the motion to suppress does not contain any new information or argument not already presented to this court in the context of the motion to suppress the DNA evidence." The State's opposition made no mention of Defense Exhibit #5. After the denial of the Motion for Reconsideration, Walker entered a conditional plea of guilty to (1) attempted first-degree murder; (2) conspiracy to commit first-degree murder; and (3) use of a firearm in the commission of a crime of violence. The court sentenced him to life imprisonment, with all but 30 years suspended and five years of probation. Walker then appealed the circuit court's denial of the Motion to Suppress to the Appellate Court of Maryland.

The Appellate Court affirmed the judgment of the circuit court. *Walker v. State*, No. 433, 2022 WL 1416675, at *1 (App. Ct. Md. May 4, 2022). The Appellate Court observed that "the Supreme Court [of the United States, in *Maryland v. King*,] differentiated between warrantless searches under the Act from seizure of DNA pursuant to a warrant." *Id.* at *17. The Appellate Court held "that the 2018 DNA sample obtained from Walker, pursuant to a search warrant, was not subject to the DNA Act and was, therefore, properly retained within CODIS in 2019, when it was matched to DNA evidence collected at the scene of the shooting of Gilbert Dodd." *Id.* at 26.

Walker petitioned this Court for a writ of certiorari, which we granted on August 25, 2022. 481 Md. 2 (2022).

# III
# DISCUSSION

Walker has asked us to decide whether DNA samples obtained pursuant to *search warrants* are subject to expungement under the DNA Collection Act and whether the Act provides an exclusionary remedy for the State's failure to expunge or destroy a DNA sample or record. As we have stated, the record is unclear as to whether the DNA sample Walker seeks to have excluded was obtained pursuant to a search warrant, an arrest, or from a forensic DNA sample. Thus, we refrain from deciding the questions presented in this case. We agree with the State that "[t]he record is regrettably conflicted as to the source of the DNA profile associated with Walker that already was in the CODIS database and was matched to the profile generated from the crime-scene vomit sample."

16

**[Respondent Br. 3]** For the reasons discussed below, we conclude that a limited remand for additional factfinding is the appropriate disposition of the case.

This Court may remand a case to the Appellate Court or a trial court when we conclude that affirming, reversing, or modifying a judgment on appeal will not determine "the substantial merits of [the] case" or that "justice will be served by permitting further proceedings[.]" Md. Rule 8-604(d). In ordering a remand, "the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided." *Id.* The court to whom the case is remanded "shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court." *Id.* The purpose of the remand on a motion to suppress is not to permit the parties to present new evidence that they should have offered at the initial suppression proceeding.[11] *Southern v. State*, 371 Md. 93, 107, 110 (2002).

In some instances, we have declined to decide the substantial merits of a case when the trial record was underdeveloped. *See Wilkerson v. State*, 420 Md. 573, 598–600 (2011). In *Wilkerson*, the defendant filed a motion to suppress statements he made to police in custodial interrogation, which the circuit court denied. *Id.* at 581–82. Before this Court,

---

[11] In *Southern v. State*, we explained that "the cases permitting new evidence on remand usually do so to correct some action taken by the trial court in a proceeding collateral to the trial itself which results in unfairness to a party." 371 Md. 93, 107 (2002). "We [did] not [find] a case that [] permitted the reopening of a suppression proceeding, after an appellate holding that the State [] failed to meet its burden on a constitutional challenge, for the presentation of additional evidence where, on the facts and law, the motion to suppress should have been granted." *Id.* at 108.

17

Wilkerson raised the issue of whether the trial court erred by not suppressing his statements because law enforcement officers used a form of questioning prohibited under *Missouri v. Seibert*, 542 U.S. 600 (2004). *Id.* at 584. The State filed a conditional-cross petition for a writ of certiorari, claiming that Wilkerson had failed to preserve the *Seibert* challenge issue. *Id.* at 585. Rather than decide the issue of preservation against Wilkerson and in the State's favor, this Court concluded that "[t]he question of whether a *Seibert* challenge 'plainly appears [on] the record' to have been raised in or decided by the trial court in the present case is too close to call." *Id.* at 598. This Court concluded that the appropriate disposition of the case was "a limited remand to the [c]ircuit [c]ourt for additional evidence—should the parties choose to introduce it—and argument on a clear *Seibert* challenge and appropriate findings by the trial judge." *Id.* at 599. "Regrettably, we [were] unable on this record to confront head-on the merits of the questions presented in the petition and cross-petition[.]" *Id.* at 575; *see also Simpkins v. Ford Motor Credit Co.*, 389 Md. 426, 438–40 (2005) (remanding the case when the trial court did not substantively consider factual issues the parties raised on a motion to dismiss); *Maryland Supreme Corp. v. Blake Co.*, 279 Md. 531, 548–49 (1977) (explaining that justice would be best served by remanding the case to the trial court to make findings on dispositive facts and corresponding conclusions of law); *Amabile v. Winkles*, 276 Md. 234, 244 (1975) (ordering a remand to allow the trial court an opportunity to reconsider and amend its factual finding consistent with the record).

The "appellate courts need trial courts to explicate, to some degree, just what they are deciding or finding so that we may perform our tasks." *Wilkerson*, 420 Md. at 597; *see*

*also* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"). "Where there is solid evidence in support of disputed factual allegations, it is proper to place the responsibility for resolving such a conflict 'with the trial court, a tribunal which is in a position vastly superior to that of an appellate court to perform this very important task.'" *Simpkins*, 389 Md. at 440 (quoting *Kowell Ford, Inc. v. Doolan*, 283 Md. 579, 584 (1978)).

Here, based on the circumstances of the case—which include the parties' argument at the suppression hearing that the DNA sample was obtained from Walker's person pursuant to a search warrant, the circuit court's statement that the DNA sample was collected from a motorcycle pursuant to a search warrant, and information in Walker's Motion for Reconsideration that the DNA sample was a forensic specimen—we decline to decide the merits of the issues presented and remand the case to the circuit court for additional factfinding. At the suppression hearing, both parties maintained that Walker's DNA sample collected through the January 2019 search warrant was the DNA sample that matched the DNA sample from the crime scene in this case. As mentioned in our earlier discussion of the circuit court's opinion, it is unclear if the court intended to find, as the parties had proffered, that the DNA sample collected from Walker through the January 2019 search warrant was the matching sample. In any event, the circuit court did not make a clear finding of fact concerning whether the DNA sample in CODIS that matched to the sample from the crime scene was a search warrant sample taken from Walker, a so-called arrestee sample taken from Walker, or a forensic sample.

19

The record identifies four DNA samples pertaining to this case: (1) a July 2018 sample taken from Walker incident to arrest—an arrestee sample; (2) an August 2018 sample taken, through a search warrant, from the motorcycle in the 2018 Baltimore City case; (3) a January 2019 sample taken from Walker pursuant to a search warrant; and (4) a February 2018 sample taken from forensic evidence (a gun) in an unrelated homicide case.

It was not until after the suppression hearing (when Walker attached Defense Exhibit #5 to his Motion for Reconsideration) that the circuit court was provided with information indicating that the DNA sample responsible for the match was a forensic sample obtained from a gun recovered in an earlier case: a February 2018 homicide. The exhibit is the only evidence in the case (albeit not presented at the suppression hearing) that documents *any* match to the crime scene vomit. And it is the only documentary evidence that shows a CODIS hit occurring on September 11, 2019, which the parties agree is the date of the CODIS hit at issue. The exhibit shows that the high stringency match between *two forensic specimens* was between a forensic DNA sample, "previously linked to Kevron Walker," collected for an offense that occurred on February 25, 2018, and the forensic DNA sample derived from the vomit at the Carroll County crime scene. The information as to a forensic DNA sample in the exhibit is inconsistent with the parties' arguments during the motions hearing before the circuit court.

Walker acknowledges that, on its face, the exhibit shows a match between two forensic DNA samples, and Walker's counsel conceded, at oral argument, that forensic samples are not subject to expungement pursuant to the Act. The State likewise subscribes to this view of the Act, but that is not the basis on which the circuit court or the Appellate

20

Court ruled. Because we have been asked to address whether DNA samples obtained via search warrants are subject to expungement and it is unclear whether the DNA sample at issue was collected from Walker via a search warrant, we are unable to determine whether the question on which we granted certiorari is actually presented. For this particular case, we conclude that a remand for additional fact finding is the appropriate disposition of this case. *See Wilkerson*, 420 Md. at 575 ("Regrettably, we are unable on this record to confront head-on the merits of the questions presented in the petition[.]"). On remand, the circuit court should resolve the ambiguity surrounding the origin of the DNA sample that generated the DNA database match.

Walker's assertion, at oral argument, that a remand is not appropriate on the ground of a lack of preservation is unpersuasive. His claim that the State's argument (that the DNA sample at issue was a forensic sample) is not preserved for review in this Court is flawed for two reasons. First, this Court's authority to order a remand is not contingent on preservation. In accordance with Rule 8-604(d), if this Court determines "the substantial merits of a case will not be determined by affirming, reversing, or modifying the judgment, or that justice will be served by permitting further proceedings," we may remand the case. Second, Walker overlooks that the topic of remand is raised in the questions presented in his petition for a writ of certiorari:

> Assuming, arguendo, that the destruction and expungement provisions in §2-511 apply only to arrestee samples, was the trial court's finding of fact, that the DNA sample at issue here was not an arrestee sample, clearly erroneous; or, in the alternative, if the record is unclear as to whether the DNA sample was an arrestee sample, should the case be remanded to the circuit court for an evidentiary hearing, pursuant to Md. Rule 8-604, so that the court can receive evidence and make findings of fact as to whether the DNA sample

21

was an arrestee sample or was collected from Petitioner pursuant to a search warrant for his DNA?

Thus, Walker suggested that the case be remanded to the trial court for a factual finding if the record was found to be ambiguous.

We note that the State argues that a remand is not warranted because "a remand for additional factfinding at this point would represent a third bite at the apple" and that this Court should only remand if the record lacks sufficient evidence to affirm the denial of the suppression motion. The State then asserts that the appropriate holding is for this Court to find that Walker failed to carry his burden on the Motion to Suppress to demonstrate a violation of the Act. Although we agree with the State that Walker has the burden to establish a violation of the Act, we are unable determine whether the DNA sample at issue was: (1) recovered pursuant to a search warrant served on Walker; (2) collected from Walker, upon his arrest; or (3) a forensic specimen recovered from evidence collected in the investigation of another crime. Thus, we are unable to reach the substantial merits of this case. We conclude that a limited remand is warranted for the circuit court to receive evidence as to the origin of the DNA sample at issue and to make additional factual findings as to the matter.

**IV.**
**CONCLUSION**

For the foregoing reasons, we remand the case, without affirmance or reversal, to the Circuit Court for Carroll County for further action consistent with this opinion. On remand, the circuit court should make factual findings with respect to the origin of the DNA sample contained in the CODIS database that resulted in a match with the crime

22

scene DNA sample in this case. Because neither party presented documentary evidence during the suppression hearing, the court may hold a hearing for the limited purpose of receiving evidence and argument related to the origin of the DNA sample, should the parties choose to introduce such evidence. The court should then transmit written findings of fact to this Court. Accordingly, we shall retain jurisdiction over this case. Within 21 days of the transmission of the circuit court's written findings, the parties should move to supplement the record with the materials presented on remand and propose a schedule for supplemental briefing, if any.

**IT IS SO ORDERED; WITHOUT AFFIRMING OR REVERSING, CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER ACTION CONSISTENT WITH THIS OPINION. PETITIONER TO PAY COSTS.**